## Harner Appeal

*Henry E. Harner*, p.p., for appellant.

WOODSIDE, J., December 8, 1947.—This comes before us on appeal of Henry E. Harner, a candidate for district attorney, from the decision of the county board of elections regarding the computation of the votes of

the fifth precinct, seventh ward, Harrisburg, cast at the election held November 4, 1947.[1]

At this election two of the county commissioners were candidates for reëlection and therefore the judges of the court of common pleas acted as "a return board" as is provided by section 1403(b) of the Pennsylvania Election Code of June 3, 1937, P. L. 1333, 25 PS §3153, hereinafter referred to as the Election Code.

When the clerks computing the vote examined the duplicate return sheet of the fifth precinct, seventh ward, Harrisburg, and made the comparison with the number of electors certified as registered in that district, it appeared that the total vote returned for the candidates for district attorney, and for other offices not here involved, exceeded the number of registered electors in said district.[2] As is provided in section 1404(b) of the Election Code (25 PS §3154) this excess was deemed a discrepancy and palpable error, and an investigation was made by the return board which included the examination of the members of the district election board.

This investigation revealed that the number of electors' cards contained in the registration book was 962. The street list contained 971 names but it was explained by a clerk in the registration office that certain changes and corrections were made subsequent to the preparation of the street lists. The number 953 was certified to the return board. This number was obtained from a record which is made by adding or subtracting daily to the total as electors are registered or

---

[1] The only matter before us is the appeal of Harner. Even were we to determine that his position is sound we could change only the vote as to the district attorney and for none of the other offices: McIntyre's Appeal, 343 Pa. 87, 91 (1941); Phillips' Appeal, 262 Pa. 396, 399 (1918).

[2] The number of electors in this district certified by the board was 953. Upon investigation the correct number was found to be 962.

removed from a particular district. This figure was not checked against the book for a considerable length of time. The cards in the registration book being the best evidence before the return board of the number of electors in the district and the clerks in the registration commission office having stated that the correct number of registered electors was 962, that was the number accepted by the board as correct. This was the exact number of votes cast in the district for the office of district attorney.

Two machines were used in the election district. The certificate on the duplicate return sheet indicates that on machine number 22607 the protective counter showed 008882 at the opening of the polls and 009390 at the close of the polls, and that the public counter showed 508. That on machine number 22610 the protective counter at the opening of the polls showed 009459 and at the close of polls 009845, and that the number on the public counter was 386. This would make a total of 894 votes cast.

After due notice to interested parties as required by law, these machines were publicly opened, examined and tested. The public counter on machine number 22607 showed 558 and the protective counter showed 009440, and on machine number 22610 the public counter showed 436 and the protective counter showed 009895. This indicated a total of 994 votes cast. Thus each machine showed 50 more votes than the certificates on the duplicate return sheet indicated.

The test of the voting machines revealed no defects. The machines and the duplicate return sheet both showed that Carl B. Shelley, Republican candidate for district attorney, had received 339 votes on one machine and 389 votes on the other, or a total of 728, and that Henry E. Harner, Democrat, had received 85 on one machine and 149 on the other, or a total of 234. This made a total of 962 votes for both candidates.

The list of voters as shown on the form returned to the return board contained 950 names. The list of voters obtained from the minority inspector of election also showed 950 names. The signed voters' certificates returned for this district were obtained from the registration bureau and counted by the clerks of the return board who certified that there were 877 of them. The return board concluded that inasmuch as no legal vote could be cast without a signed voter's certificate that there were, from the facts before it, 877 legal votes, and that since the machines showed that 994 votes were cast, 117 of them were therefore illegal. The board deducted 117 votes from the referendum, the amendment and the candidates for each office in such proportion as the votes on the machine were apportioned between the particular candidates or questions. This resulted in the reduction of the total number of votes in the district of Carl B. Shelley from 728 to 639, and the total number of votes of Henry E. Harner from 234 to 206, and reduced the majority which Shelley received in the district from 494 to 433.

The situation might be more clearly understood by the following table:

| Registration | | | Return Showed | Votes Subtracted | Corrected Figure | Total Co. Vote |
|---|---|---|---|---|---|---|
| Rep. | 787 | Shelley .... | 728 | 89 | 639 | 36,347 |
| Dem. | 171 | Harner .... | 234 | 28 | 206 | 29,462 |
| Non-P. | 4 | Majority .. | 494 | 61 | 433 | 6,885 |
| Total.. | 962 | Total ...... | 962 | 117 | 845 | 65,829 |

It will be noted from the above that Shelley's majority was 6,885 and that even if all of Harner's vote and none of Shelley's vote in the fifth precinct of the seventh ward were counted it would not affect the result.

Section 1407 (a) of the Election Code (25 PS §3157), provides that "any person aggrieved by any order or decision of any county board regarding the computa-

tion or canvassing of the returns of any . . . election, or regarding any recount or recanvass thereof under sections 1701, 1702 and 1703 of this act, may appeal . . . to the court of common pleas."

Is Harner "aggrieved" by the count of the fifth precinct, seventh ward?

"The term 'person aggrieved' does not include one who may be aggrieved in his feelings because he believes that the action . . . is unjust, but means one whose legal rights are infringed and who by the decree complained of will suffer injury; and the right of appeal is conferred upon only those persons who are aggrieved in this legal sense by the order, judgment, or decree from which the appeal is taken. One who is not thus aggrieved is not affected or injured, and hence, has no standing to complain": 9 Standard Pa. Practice, 91, §107, and cases there cited.

In Morgan v. Terrill, 45 Pa. Superior Ct. 639 (1911), two opposing candidates for the office of assessor each received 169 votes according to the return of the district election board. Through a misunderstanding of the law the election board had failed to count two votes for one of the assessors and an overseer appointed by the court so reported to it. The court, then serving in the capacity of a return board although not then so termed, thereupon counted the two votes which resulted in the election of one of the candidates for assessor. The other candidate appealed and the Superior Court speaking through President Judge Rice said (p. 642) :

". . . It will be appropriate to consider whether the appellant was aggrieved by the order. The vote for him was not changed thereby. He was not deprived of the right to cause a contest to be instituted if he had so desired. If the order should be annulled the vote would stand a tie, and his right to the office, under the return, or legal standing to obtain it, would be no higher than that of any other person possessing the

necessary qualifications. In short, so far as the record shows, he had no right or special interest that was prejudicially affected by the order."

In 1936 while in the process of computing election returns a petition was presented to this court to open the ballot box of the first precinct of Middle Paxton Township in this county. Upon opening the box and recanvassing the vote the question was raised as to whether 40 ballots containing an "X" in the Democratic Party square and also an "X" in the Old Age Pension Party square could be counted for the Democratic candidates for those offices for which the Old Age Pension Party had no candidates. This court held they could not be counted: In re Counting of Votes, First Precinct, etc., 43 Dauph. 180 (1936). The result of the election would not have been changed regardless of the manner in which these 40 ballots were counted.

An appeal was taken to the Supreme Court which in an unreported opinion filed November 24, 1936, set forth as follows:

"Per Curiam: Upon careful review of the record we are of opinion that the conclusion of the court below is correct, but as the question is moot we can only dismiss the appeal at appellant's cost."

We have examined a number of cases both in the lower courts and in the appellate courts and have found none, nor has any been called to our attention by counsel, in which it appears that the determination of the question being considered would not change the result of the election.

It therefore is evident that appellant in the case now before us is not aggrieved and that the question before us is moot. Nevertheless, because of the public interest involved in this case we feel we should discuss briefly the points raised in the appeal and to record the authority for the acts of the judges while serving as the board.

The contentions of appellant as we understand them are first, that the board had no authority to apportion the votes, and being faced with the choice of either accepting all or rejecting all, all should have been rejected, and secondly, that the judges acting as the return board should have compared the names on the voter's certificates with the names in the registration book to determine whether or not there were any forgeries or whether there was other evidence of illegal votes.

We shall consider the contentions in their order.

In the memorandum filed by the return board in this matter it was said: "The courts have said on numerous occasions that the voters of an entire district should not be disfranchised by disregarding the vote of the district except when such action cannot be avoided."

We cite the following authority for this: Healey's Appeal, 319 Pa. 510, 512 (1935) ; Focht's Appeal, 275 Pa. 449,451 (1923) ; West Mahanoy Township's Contested Election, 258 Pa. 176,179 (1917) ; Coyne et al. v. Return Board, 83 Pitts. L. J. 533,535 (1935) ; Nomination for Office of Constable, 41 Lack. Jur. 163, 167 (1939).

It was further pointed out in the memorandum that there was nothing before the board from which it could determine for whom the 117 illegal votes were cast; that neither the Republicans nor the Democratic members of the district election board offered any explanation that would assist the return board on this point; that the testimony of the members of the district election board was that a number of voters whose cards were not in the registration book appeared and voted upon presentation of cards indicating registration, some as Republicans and some as Democrats; that the testimony indicated there were both Republican and Democratic watchers present in the district during the election.

At argument appellant said that he felt none of the illegal votes were cast for him and that the "history" of the election district during the past ten years should have led the return board to a different conclusion in recanvassing the votes, but he frankly admitted that there was nothing in the record on which to base his conclusion, and that neither the return board nor the court could make a finding not supported by the record. Of course, of this there can be no doubt.

In the board's memorandum it was pointed out that the legislature has provided for the computing or counting of the votes even where error or fraud is discovered by the county boards. Section 1404 (d) (3) of the Election Code (25 PS §3154) provides: "If any error or fraud is discovered, the county board shall compute and certify the votes justly regardless of any fraudulent or erroneous returns presented to it." "Error or fraud" having been discovered here, the provision applies.

Furthermore, appellant's contention that the return board was limited by law to either accept or reject the entire vote not only disregards the clear provision of the code above quoted, but also ignores the case of Herminie Election District Returns, 326 Pa. 321 (1937) which holds contra to such contention.

Appellant was not able to refer us to any case, nor could we find any, holding that the return board was compelled by law to either accept or reject all the votes returned from the election district under circumstances similar to this case.

In In re Dunmore Borough Election, 42 D. & C. 215 (1941), the court did exclude the entire vote of a district, but there in addition to excess of votes over signed certificates, the election officers did not sign the election returns, failed to subscribe to their oaths and added names to the voters' list, and certified that a correct return could not be made. The court of Lackawanna County there held that "there was no real elec-

tion conducted in the (district)", and the vote should be excluded.

The second contention of appellant results from a misconception of the functions of the return board.[3]

For it to compare the signatures on the voter's certificates even in a district where fraud was discovered would be the consideration of the validity of an individual vote, and in In re Warrior Run Borough Election, 54 D. & C. 183, 184 (1945), it was said the return board "cannot consider the validity of the individual votes."

In Twenty-Eighth Congressional District Nomination, 268 Pa. 313, 319 (1920), the court said:

"Any attempt to determine the qualifications of voters, or to exclude a poll because of defects in the election machinery, goes beyond this purpose . . . These and all other matters, not relating to the computation of the votes actually cast, are to be decided by contests."

In Coyne et al. v. Return Board, 83 Pitts. L. J. 533, 535 (1935), the court said:

"Considering the signing of the voter's certificate either as a qualifying act or an act having to do with the conduct of election, it is not the province of the

---

[3] Under section 301 of the Election Code (25 PS §2641), the county commissioners are ex officio the county board of elections, and have duties involving a number of things prior to as well as subsequent to an election, as for example the selection and equipping of polling places, the preparation of ballots, the receipt and determination of the sufficiency of nomination petitions, certificates and papers, the receipt and computation of election returns, and the issuance of certificates of election. From the foregoing it can be seen that the duties imposed by law upon the county board of elections are far more extensive than the duties of "a return board." The county commissioners (in this class county) are also ex officio the registration commission under section 3 of the Registration Act of April 29, 1937, P. L. 487 (25 PS §951-3). Under section 1403(b) of the Election Code (25 PS §3153), when two or more of the county commissioners are running for office the judges of the court of common pleas serve in place of the commissioners but only as "a *return* board".

return board to deal with this matter. If any are aggrieved, the redress which the law provides is an election contest."

See also In re Dunmore Borough Election, 42 D. & C. 215, 216 (1941); Focht's Appeal, 275 Pa. 449, 451 (1923); Plains Twp. Election Returns, 280 Pa. 520 (1924).

Appellant knows that the signatures on the voter's certificates are being compared with the signatures on the cards in the registration book by the Registration Commission upon whom is placed the duty to do it by section 38 of the Registration Act of May 25, 1937, P. L. 814, 25 PS §807-138. He also knows that he himself shall have the right to compare them. If the commission discovers any evidence of fraud it is its duty under section 38, supra, to refer it to the district attorney.

When the palpable error was discovered by the return board it called before it all the members of the district election board and through counsel examined publicly each of them. Appellant in this case was also permitted to question them. The machines were publicly opened, examined and tested. The election papers, including those in the hands of the minority inspector, were all publicly examined. The correct number of registrations was carefully checked. Stenographic notes were taken of all proceedings including all that transpired during the opening and testing of the machine. All the facts were reported to the district attorney. But the comparison of signatures *by the return board* would have been improper: Coyne et al. v. Return Board, supra.

Before any decisions were made all the cases and provisions of the statutory law called to our attention by appellant in the argument of this case, as well as many others, were carefully considered by the judges of this court while acting as the return board.

And now, to wit, December 8, 1947, for the reasons that appellant does not allege or show that he is aggrieved and because the case is moot, the appeal is dismissed.