## McIntyre's Appeal.

Argued October 8, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*Paul A. McGlone,* for appellant.

*M. F. McDonald,* of *McDonald, McDonald & McDonald,* with him *Alphonsus L. Casey,* for appellee.

OPINION BY MR. JUSTICE MAXEY, October 13, 1941:

At the primary election held in Dunmore Borough, Lackawanna County, on September 9, 1941, Patrick F. McIntyre (the appellant) and James Garvey (the appellee) were candidates for the Democratic nomination for School Director. McIntyre received 2156 votes and Garvey received 1971 votes. In the Second District of the Second Ward of the Borough McIntyre received, according to the voting machine used, 343 votes and Gar-

vey 82 votes. There were 755 registered Democratic voters in this district. The record shows nothing prima facie abnormal in the number of votes cast by the qualified Democratic electors of that district for candidates for school director.

The Democratic candidate for Burgess was also selected at the same primary election. In the district above named Thomas A. Bevelock received, according to the voting machine, 631 votes and Thomas Ferguson received 82 votes, one Walker 11 votes and one Malloy 6 votes. The total vote thus cast for the candidates for the Democratic nomination for Burgess was 730, or 52 more than the number on the Democratic list of voters.

At 11:40 P. M. September 9, 1941 (as appears in the opinion of the court below), "a bench warrant issued to the sheriff upon complaint that the election board of the Second District of the Second Ward in the Borough of Dunmore was committing a fraud and had not computed their returns. The sheriff arrived at the place after 12 m. on the morning of the 10th, gathered up all papers, and brought the machines, the records, and the election officers before the Court. The testimony was taken at the time and the judge of the election board stated that the returns on the machines were not the correct election returns. As the hour was late the board were permitted to go upon furnishing bail to appear the next day.

The next day the election officers appeared and completed their returns, after saying, first, that they did not need the machines opened, and, second, that they would like to open the machines. After the returns were completed they refused to sign them, certifying as follows: "I refuse to sign the returns because of a discrepancy between the list of voters and those recorded on the machines. Judge, Casper Gaetano; Maj. Inspector, Andrew Malia; Min. Inspector, Charles Banno."

At a later hearing on Saturday, September 13th, the board was unable to explain any reason for the discrepancy. They were still unable to explain the reason

for the discrepancy before the return board on September 18th. The return board opened the machines and recorded the vote as shown by the machines.

The *only appeal* taken to the Court of Common Pleas from the action of the county board in recording the vote as shown by the machines was the appeal taken by Thomas Ferguson, one of the candidates for the Democratic nomination for Burgess. No notice of this appeal was served on any candidate for school director and these candidates were not in any way represented before the court. The Court below found that "no data exists for which a correct return of the persons who voted could be made. Fraud is apparent on the face of the returns." The Court then "threw out the *entire return* of the Second District of the Borough of Dunmore." This action resulted in Ferguson receiving the Democratic nomination for Burgess and Garvey receiving the Democratic nomination for school director. Bevelock and McIntyre took separate appeals to the Court. We handed down an order on October 9th affirming the action of the Court below as to Bevelock.

McIntyre appeals to this Court on the ground that he had no notice of the appeal from the action of the county board to the Court below, that he was not represented before the Court below and that therefore he never "had his day in court." He contends that since the contest for the Democratic nomination for school director was not before the Court of Common Pleas, its action in throwing out the *entire vote* of the district in question, when only the vote for the Democratic nomination for *Burgess* was before it, was extra-judicial and of no legal effect whatsoever.

It is an elementary principle that the final order of any competent tribunal stands until it is successfully appealed from in a higher tribunal. This Court in *Phillips' Appeal*, 262 Pa. 396, 399, held that when a candidate "failed to appeal" from the action of the County Commissioners acting as a return board to the Court of

Common Pleas, that Court "was without power to grant the relief prayed for in the petition which he ultimately presented." This Court so held in the face of the contention that "the appeal by Davis (Phillips' opponent) afforded the appellant (Phillips) an opportunity to have a general investigation as to any frauds which may have been committed in any portion of the senatorial district." This Court said (p. 399) "The argument of the appellant is based upon the theory that the fifteenth section of the Act of July 12, 1913, P. L. 719, provides that the court is 'to hear and determine all matters pertaining to any fraud or error committed in said election precinct, division or district and to make such decree as right and justice may require.' " This Court refused to give to the section thus involved "the larger or more comprehensive sense sustaining the construction urged by the appellant." In that case Davis had taken an appeal from the action of the County Commissioners giving Phillips the nomination. Davis appealed and the Court of Common Pleas rejected the votes of enough districts to give Davis the nomination. The Court said that Phillips' *failure to appeal* from the votes recorded in other districts in which he later claimed fraud, was "a natural mistake but none the less fatal."

The clear import of this Court's decision in the Phillips case is that the Court of Common Pleas on an appeal from the action of a return board is limited to the matters raised by the appeal of the "person aggrieved" and that the Court cannot broaden its inquiry to have a "general investigation of fraud" in the election in question.

The fact that no election returns were signed by the election officers conferred no power on the court below to hold that no election for an office was held in the district in question. That was squarely ruled in *Carbondale's Election*, 280 Pa. 159, where the petition to have the entire poll rejected was denied, even though there was, as this court declared in an opinion by the present Chief Justice (164), "in effect no return at all as the one before the Court was inadequate and incomplete."

There were also many other irregularities in the Carbondale case. One of these was that there were more ballots in the box than voters on the voters' check list. (In the opinion filed by the Court below in that case it appears that among other irregularities proved was the failure of the election officers to take the required oath of office.) In that case the Court of Common Pleas upon being petitioned to throw out the entire poll from the district in question on account of these irregularities, refused to do so, and over the objection of counsel, ordered the ballot box brought in and opened and then ordered a recount of the ballots and subjected the election officers and others to examination and upon determining in those proceedings what was the true vote cast in the election, ordered the recording and certifying of the vote cast for the several candidates for public office voted for in the district in question computed. Upon appeal this action was sustained by the Supreme Court.

If the entire poll of an election district must be rejected because the election officers sign no returns, the election officers of a single district might nullify the will of the entire electorate in a borough, city, county or state by refusing to sign the returns in a pivotal election district.

The court cites as its authority to exclude the whole district and thus to deny McIntyre his election as school director of the Borough, *Braddock's Election Case,* 63 P. L. J. 585, affirmed in 251 Pa. 110. The only question decided in that case (as appears in the opinion of this court) was that "the 'five qualified electors' who are authorized by Section 15 of the Act of July 12, 1913, P. L. 719, relating to primary elections, to present a sworn petition averring fraud or error in the computation of a vote and asking for a recount of the votes, need not be electors of the precinct, division, or district in which the alleged fraud or error was committed." The opinion of the lower court in that case shows that notice of the appeal before the Court of Common Pleas was given "to

all candidates who would be affected by it." Here the complaint is that no notice was given to McIntyre, a candidate for school director, and that no appeal was taken from the decision of the return board in his favor. The Act of 1937, P. L. 1451, Section 1407, specifically provides that "any person aggrieved by any order or decision of any county board regarding the computation or canvassing of the returns of any primary or election, or regarding any recount or recanvass thereof under sections 1701, 1702, 1703 of this act, may appeal therefrom within two days after such order or decision shall have been made, whether then reduced to writing or not, to the Court of Common Pleas of the proper county, setting forth why he feels that an injustice has been done, and praying for such order as will give him relief."

If Garvey was "aggrieved" by the action of the county board, he did not evidence that fact by taking an appeal. McIntyre, of course, had no reason to appeal. Therefore the "order or decision" of the county board, so far as concerned the Democratic nomination for School Director, stands as an order not appealed "within two days after such order or decision (was) made", or at any other time.

The foregoing in quotation marks are from clause (a) of Section 1407 of the Election Code of 1937 (p. 1451). Clause (b) of the same section defines the power of the Court "on an appeal" from the action of the County Board. "An appeal" must, of course, refer to *the* appeal provided for in the preceding clause (a) i. e. an appeal by "any person aggrieved by any order or decision of any county board." Persons who have rights under the order or decision of the county board cannot have those rights taken away when the order or decision which recognized or established those rights is not appealed from. McIntyre's right to the Democratic nomination for School Director which the County Board after examining the voting machines and the election officers declared in effect that he had won, was not before the Court of Com-

mon Pleas for adjudication for the reason that McIntyre's opponent, Garvey, took no appeal from the County Board's decision. No court can adjudicate a matter not before it.

That an individual's right to a public office or to a nomination to a public office is within the protection of the law is not questioned, and that an individual cannot be dispossessed of an office or a nomination which is prima facie his, without a hearing of which he shall have had due notice, is equally well recognized. "In judicial proceedings the law of the land requires a hearing before condemnation and a judgment before dispossession." Cooley's Constitutional Limitations (8th ed.), Vol. 2, p. 741.

The rejection by judicial order of all the votes of any election district, with possible unjust results to candidates for public office, is a serious matter which courts will undertake only when the issue is properly before them and only when the proof that "right and justice" will thereby be done is clear. This Court has frequently refused to sanction the rejection of an entire poll even when there was evidence of many irregularities, as in the *Carbondale's Election* (supra) or even when there was fraud or suspicious circumstances. In *Focht's Appeal*, 275 Pa. 449, this Court, speaking through Mr. Justice SIMPSON, said: "To disfranchise all of the one hundred and sixty-four electors . . . would have been a gross error; such action would not have been justified even if it had appeared that the twenty-nine suspicious votes had all been cast for one or another of the candidates." See also *West Mahanoy Township's Contested Election*, 258 Pa. 176, where this Court held that "the mere casting of fraudulent votes" was not sufficient to throw out the return from the election district.

In the instant case the County Board decided after hearing the testimony of the election officers and after examining the voting machine that McIntyre received 343 votes and Garvey received 82 votes in the district in

question. There was nothing prima facie suspicious about this vote (as there was about the 730 votes for Burgess), for there were 755 registered Democrats voting in the district, and it is a matter of common knowledge that when a crooked election board is bent on stealing a nomination or election for its favorite candidate "it votes the entire list" i. e. it "rings up" on the voting machines sufficient fraudulent votes to make the total vote equal in numbers to the entire registration list. Under the facts of this case, Garvey apparently had no reason to feel "aggrieved" by the action of the County Board and therefore took no appeal from its decision. It follows that *no contest between McIntyre and Garvey* for school director was before the court on the appeal of *Ferguson,* a candidate for *Burgess.* The Court therefore had no statutory power to reverse the decision of the County Board in respect to McIntyre's and Garvey's vote for school director. It is elementary that "the right to an appeal at law is and always has been statutory. It is a remedy which the legislature may in its discretion grant or take away, and it may prescribe in what cases and under what circumstances, and from what courts appeals may be taken." 2 R. C. L. p. 27, sec. 3.

The County Board is under the Election Code a tribunal which has the power to make such an "order or decision" as it made in favor of McIntyre and against Garvey in the instant case. The Code also prescribes when "any person aggrieved" must appeal from that "order and decision" unless he is satisfied to let it stand. Garvey took no appeal. This is a fact apparent on the face of the record. In the absence of the fact of any appeal by Garvey from the decision of the County Board, the Court of Common Pleas had no power to make the order which in effect deprives McIntyre of the Democratic nomination for school director in the Borough of Dunmore.

The decree of the court below is reversed. Costs to be paid by appellee.