### In re PETITION TO CONTEST the PRIMARY ELECTION OF MAY 19, 1998.

### Appeal of James KNOX, Appellant.

Commonwealth Court of Pennsylvania.

Argued Nov. 19, 1998.
Decided Dec. 21, 1998.

Kevin Forsythe, Pittsburgh, for appellant.

Robert L. Byer, Pittsburgh, for appellee.

Before PELLEGRINI, Judge and KELLEY, Judge, and NARICK, Senior Judge.

PELLEGRINI, Judge.

Knox and 44 other registered voters of Allegheny County (collectively, Objectors) appeal from an order of the Court of Common Pleas of Allegheny County (trial court) sustaining the preliminary objections filed by the Allegheny County Elections Department (Elections Department) and Allegheny 2000 Citizens Committee (Allegheny 2000) for lack of subject matter jurisdiction.

In 1997, the General Assembly enacted legislation (Act 12) revising the procedure for a second class county to adopt a Home Rule Charter.[1] Under that legislation, a Home Rule Charter Commission (Charter Commission) was established that drafted a proposed Home Rule Charter (Charter) for Allegheny County. The Charter Commission drafted a proposed charter that was presented to the voters at the May 19, 1998 primary election and by a slim margin, it was adopted.

Seeking to have the adoption of the Charter declared unconstitutional and illegal, Objectors filed a Petition to Contest the Primary Election with the trial court. In the five-count petition, they did not allege any defect in the conduct of the election, but contended that the placement of the referendum question on the ballot was improper because the General Assembly, in enacting Act 12, purportedly violated a number of provisions of the Pennsylvania Constitution relating to the enactment of legislation.[2]

---

1. *See* Act 1997–12, Section 2 of the Pennsylvania Counties Code, Act of July 28, 1953, P.L. 723, *as amended*, 16 P.S. §6101–C to 6113–C. Act 12 amended the Second Class County Code to allow Allegheny County to use for a limited period of time a different procedure for adopting a home rule charter than that contained in the Home Rule Charter and Optional Plans Law, Act of April 13, 1972, P.L. 184, §§101–1309, *as amended*, 53 P.S. §§1–101–1–1309.

2. Specifically, Objectors' petition alleged the following five counts:

 1. Act 12 of 1997 violated Article IX, Sections 1 and 2, of the Pennsylvania Constitution by suspending the procedures of the existing

Home Rule Law, Act 62 for a limited time only, with respect to the single municipality of Allegheny County.

 2. Act 12 further violated Article IX, Section 2, of the Pennsylvania Constitution by depriving the people of Allegheny County of their right and power to "frame" their own Home Rule Charter, leaving them only with the option of voting yes or no.

 3. Act 12 violated Article III, Section 1, of the Pennsylvania Constitution because it was so altered and amended in its passage through the Senate as to change its original purpose.

 4. Act 12 violated Article III, Section 3, of the Pennsylvania Constitution because it contained more than one subject.

They also alleged that certain entities in campaigning for the Charter's adoption had violated campaign finance provisions contained in the Pennsylvania Election Code (Election Code).[3] Because of these "illegalities," Objectors requested the trial court to set aside the election of May 19 and declare it null and void.

The Elections Department and Allegheny 2000[4] filed preliminary objections in the nature of a demurrer requesting that the trial court dismiss Objectors' petition for lack of subject matter jurisdiction. They contended that the challenges brought by the Objectors were not cognizable in an election contest because under Section 1756 of the Election Code, 25 P.S. §3456, election contests were limited to allegations of "illegality" in the casting, counting or return of votes.[5] Objectors countered, maintaining that their petition was cognizable because their constitutional and campaign finance law allegations fell within the ambit of Section 1756 allowing election contests where the "election is illegal."

■ Agreeing with the Elections Department and Allegheny 2000, the trial court sustained the preliminary objections holding that the "illegality" referred to in Section 1756 was limited to investigating illegalities concerning the casting, counting and return of votes and not the illegalities alleged by the Objectors. Because Objectors' constitutional claims did not challenge illegality in the election process itself but the events leading up to the election, the trial court found it did not have jurisdiction under the Election Code to hear such claims in an election contest and dismissed the first four counts of the petition. The trial court also dismissed the fifth claim regarding allegations concerning campaign finances because the provisions of the Election Code dealing with campaign finances[6] set forth the specific procedure for alleging campaign finance violations and they did not include an election contest of the type Objectors filed. This appeal by Objectors followed.[7]

■ On appeal, Objectors again contend that their election petition can be maintained under Section 1756 of the Election Code because the term "illegal" encompasses more than only allegations of fraud or wrongdoing in the casting, computation and return of votes. They argue that it should be interpreted broadly to include constitutional challenges to enabling statutes and violations of campaign finance laws that render the election "illegal." Contrary to Objectors' contention, however, Section 1756 of the Election Code only allows challenges based on "illegality" when the "illegality" is a violation of those provisions of the Election Code dealing with the conduct of an election.

---

5. Numerous allegations of violations of the Political Campaign Expense Accounting Reporting Law, 25 P.S. §3246 by the Home Rule Education Fund.

3. Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§41–3591. The provisions dealing with campaign financing are contained in Article XVI of the Code, 25 P.S. §§3241–3260b.

4. Though not an Intervenor, the State Attorney General's office filed a statement maintaining that the trial court lacked subject matter jurisdiction to consider constitutional claims raised in the petition.

5. The relevant language in Section 1756 of the Election Code, 25 P.S. §3456, provides:

The commencement of proceedings in the case of contests ... shall be by petition ... [which] shall concisely set forth the cause of complaint, showing wherein it is claimed the primary or election is illegal.

Section 1757 of the Election Code, 25 P.S. §3457, also requires that the affidavits verifying an election contest petition must contain a statement that the affiant believes "the primary or election was illegal and that the *return* thereof was not correct." (Emphasis added.)

6. Assuming that Article XVI of the Election Code applies to expenses relating to advocating a Referendum question, Section 3256 of the Election Code, 25 P.S. §3256, provides that the action alleging improper campaign financing practices begins with a request to the appropriate court of common pleas for an audit of expense accounts.

7. Our scope of review in election contest cases is limited to examination of the record to determine whether the trial court committed errors of law and whether the court's findings were supported by adequate evidence. *In re Petition to Contest General Election for District Justice in Judicial District 36-3-03*, 695 A.2d 476 (Pa.Cmwlth. 1997), *petition for allowance of petition for allowance of appeal denied*, 1998 WL 717678 (1998).

In examining this provision, courts of common pleas have consistently held that election contests can only be brought under Section 1756 of the Election Code regarding "matters pertaining to the election process itself, such as the conduct of balloting according to law, the tabulation of the results, and the return thereof ... the bare mechanics of accurately and honestly ascertaining and recording the will of the electorate." *In re Bensalem Township Supervisor Election Contest,* 26 D. & C.2d 433, 435 (Bucks Co.1961). As such, election contests are limited to questions of "whether or not the will of the qualified electors was correctly shown by the returns made." *In re Altshuler Election,* 66 D. & C. 476, 482 (Phila.Co.1948). Echoing that interpretation, the Court has also held that to be maintainable, election contests must allege fraud or wrongdoing on the part of election officials or others in the casting, computation and return of votes concerning the election being challenged.[8] *See Reese v. County Board of Elections,* 10 Pa. Cmwlth. 448, 308 A.2d 154 (1973).

Objectors' action is not challenging any aspect of the conduct of the election. Instead, they are challenging the manner in which Act 12 was enacted and violations of campaign finance law which they concede does not have anything to do with casting, computation or return of the vote. Because in order to be maintained, an election contest under the Election Code requires that "illegality" involve the Election Code and not tangential matters, the trial court properly dismissed the petition. Accordingly, the decision of the trial court is affirmed.

### ORDER

AND NOW, this 21st day of December, 1998, the order of the Court of Common Pleas of Allegheny County dated June 24, 1998, is affirmed.

---

8. Objectors contend that in *In re Contest of Election for the Office of Tax Collector in the Township of Newport, Luzerne County,* 384 Pa. 474, 121 A.2d 141 (1956), our Supreme Court considered an election contest petition which alleged "illegality" in the election because some voters were not qualified electors under the Pennsylvania Constitutional Article defining domicile and, as such, a constitutional challenge can be maintained in an election contest. What this argument fails to mention, however, is that the Court was using the constitutional provision only to aid in the interpretation of a specific provision defining domicile under the Election Code. Furthermore, the petition was dismissed based on insufficiency of evidence relating to fraud or improper action concerning the actual vote.