**Samuel L. DAYHOFF, Andrew J. Waybright and James W. Waybright, Appellants**

v.

**Thomas J. WEAVER, Harry Stokes and Thomas L. Collins.**

Commonwealth Court of Pennsylvania.

Argued April 10, 2002.

Decided Oct. 17, 2002.

John R. White, Gettysburg, for appellants.

John M. Hartzell, Gettysburg, for appellees.

BEFORE: SMITH–RIBNER, Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

This is an appeal from the order of the Adams County Court of Common Pleas (trial court) upholding the determination of the Adams County Board of Elections (Board) that Samuel L. Dayhoff (Dayhoff) and Harold J. Kirschner (Kirschner) tied in the election for Mount Joy Township Supervisor (Supervisor) thus requiring the choice of winner by lottery as set forth in the Election Code.[1] We affirm.

On November 6, 2001, elections were held for numerous statewide and local offices, including the office of Supervisor. No candidates for Supervisor appeared on the printed ballot, but Dayhoff and Kirschner each campaigned for the write-in vote for Supervisor. On November 9, 2001, the Board completed the computation and canvassing of votes [2] and, on November 14, 2001, the Board certified [3] that Dayhoff received 308 votes and Kirschner received 308 votes, a tie vote.

As a result, on November 20, 2001, Dayhoff filed a Petition for Recount of the votes cast. In response, the trial court ordered the Board to recount the votes manually, which it did on November 30, 2001.

During the recount, Dayhoff and Kirschner each lodged objections, asserting

---

**1.** Pennsylvania Election Code (Election Code), Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. § 2601—25 P.S. § 4042.

**2.** Section 1404(a) of the Election Code, 25 P.S. § 3154(a), provides for the computation and canvassing of votes as follows,

(a) The county board shall, at nine o'clock A.M. on the third day following the primary or election, at its office or at some other convenient public place at the county seat, of which due notice shall have been given as provided by section 1403, publicly commence the computation and canvassing of the returns, and continue the same from day to day until completed, in the manner hereinafter provided. For this purpose any county board may organize itself into sections, each of which may simultaneously proceed with the computation and canvassing of returns from various districts of the county in the manner provided by this section. Upon the completion of such computation and canvassing, the board shall tabulate the figures for the entire county and sign, announce and attest the same, as required by this section.

**3.** Section 1404(f) of the Election Code, 25 P.S. § 3154(f), provides *inter alia,*

(f) At the expiration of five days after the completion of the computation of votes, in case no petition for a recount or recanvass has been filed in accordance with the provisions of this act, or upon the completion of the recount or recanvass if a petition therefor has been filed within five days after the completion of the computation of votes, the county board shall certify the returns so computed in said county in the manner required by this act.

that some votes should have been excluded from the final tally and others, which were excluded, should have been counted. Kirschner objected to fifteen ballots at the recount, and Dayhoff objected to twenty-four ballots. The objections concerned such items as: improper spelling of the candidate's name; failure to include the candidate's first name; use of nicknames; failure to blacken ovals next to the line for writing in the candidate's name; and placement of the write-in candidate's name on the ballot.

After the recount proceedings, on December 4, 2001, the Board filed a Certification of Recount Proceedings, which found that Dayhoff received 308 votes and Kirschner received 308 votes, again a tie vote. On December 6, 2001, Dayhoff filed an appeal with the trial court to review the Board's decision on the twenty-four ballots that he contested. On December 7, 2001, the trial court ordered the Board to suspend the official certification of votes pending the adjudication of the appeal. The trial court then conducted a hearing on all objections lodged during the recount, and, on December 10, 2001, affirmed the Board's determination. The trial court concluded that the vote for the two candidates was tied and ordered the Board to proceed in accordance with the Election Code. Consequently, on December 13, 2001, the Board held a drawing of lots, and Kirschner won.

On December 14, 2001, Dayhoff filed a Notice of Appeal to the Pennsylvania Supreme Court. In the meantime, Dayhoff requested the trial court to stay its December 10, 2001 order pending the Supreme Court's adjudication of his appeal. The trial court granted the stay on December 17, 2001. On January 17, 2002, the Supreme Court Prothonotary transferred the case to this Court for a determination.

█ In his appeal,[4] Dayhoff contends that the trial court erred: (1) by counting five ballots as votes for Kirschner that had a sticker with the name "Harold Kirschner" in the District Magistrate "block" rather than the Supervisor "block"; (2) by failing to count eleven ballots as votes for him where the voters did not blacken the oval next to the line where Dayhoff's name was written; and (3) by failing to count five ballots as votes for him where the voters had either misspelled "Dayhoff" or omitted his first name.

█ Prior to addressing these substantive issues raised by Dayhoff, we address the Board's contention that jurisdiction over this case belongs with the Supreme Court.[5] The Board argues that an appeal to this Court is not authorized by the Election Code.[6] It is true that the Election

---

4. Our scope of review in election contest cases is limited to examination of the record to determine whether the trial court committed errors of law and whether the court's findings were supported by adequate evidence. *In re Petition to Contest the Primary Election of May 19, 1998*, 721 A.2d 1156 (Pa. Cmwlth.1998).

5. The Supreme Court *may* on its own motion or upon petition of any party, in any matter pending before any court of this Commonwealth involving an issue of immediate public importance assume plenary jurisdiction of such matter at any stage thereof and enter a final order. 42 Pa.C.S. § 726. In this case,

Dayhoff initially appealed to the Supreme Court, which transferred the case to our Court.

6. The Board cites the Election Code which provides for three different methods of post-election appeal of election results: (1) an appeal of the decision of the county board of elections to the court of common pleas, Section 1407 of the Election Code, 25 P.S. § 3157, (2) the filing of a petition for recount or recanvass, Sections 1701–1702 of the Election Code, 25 P.S. §§ 3261–3262, and (3) the filing of a petition for contest, Section 1756 of the Election Code, 25 P.S. § 3456.

Code does not specify an appeal to this Court;[7] however, the Judicial Code is the appropriate authority for appellate jurisdiction. Section 762(a)(4)(i)(C) of the Judicial Code[8] provides expressly that the Commonwealth Court shall have *exclusive* jurisdiction over appeals from the trial courts in cases involving elections or election procedures. We hold, therefore, that this Court has jurisdiction to consider the merits of Dayhoff's appeal.

The vote may be the central act in our democratic form of government. To advance the goal of free and fair elections, the legislature enacted the Election Code, and it is often said that in the interest of preventing fraud, the terms of the Election Code must be strictly enforced. *E.g., In re Luzerne County Return,* 447 Pa. 418, 290 A.2d 108 (1972). At the same time, the purpose of the Election Code is to protect, not defeat, a citizen's vote. Our Supreme Court has directed that technicalities should not make the right to vote insecure, but instead, the statute should be construed to indulge that right. *Appeal of James,* 377 Pa. 405, 105 A.2d 64 (1954). These principles are difficult to reconcile. On balance, we believe that they mean that the terms of the Election Code must be satisfied without exception but where, as a factual matter, voter intent is clear, questions should be resolved in favor of holding that the Election Code has been satisfied.

At issue here was a paper ballot with certain ambiguities caused by the fact that there were so many candidates and races on the ballot. We reproduce for the clearer explanation of the record, that portion of the ballot relating to the District Magistrate and Supervisor races:

7. In fact, Section 1407(b) of the Election Code, 25 P.S. § 3157(b) states that there shall be no appeal from the common pleas court. This section, enacted in 1937, no longer has force since the passage in 1976 of the Judicial Code, which grants this Court jurisdiction over appeals in Election Code cases. In addition, Section 1407(b) existed prior to the passage in 1968 of Article 5, Section 9 of the Pennsylvania Constitution, which provides that there "shall be a right of appeal from ... an administrative agency to a court of record or to an appellate court...." Further, the Supreme Court noted in *In re Petition to Contest the General Election for District Justice in Judicial District 36–3–03 Nunc Pro Tunc,* 543 Pa. 216, 670 A.2d 629 (1996), that this Court obtained jurisdiction over appeals involving elections when it was created in 1970.

8. It provides,
 (a) General rule.—Except as provided in subsection (b), the Commonwealth Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in the following cases:
 (4) Local governmental civil and criminal matters.—
 (i) All actions or proceedings arising under any municipality, institution district, public school, planning or zoning code or under which a municipality or other political subdivision or municipality authority may be formed or incorporated or where is drawn in question the application, interpretation or enforcement of any:

 * * *

 (C) statute relating to elections, campaign financing or other election procedures.
 42 Pa.C.S. § 762(a)(4)(i)(C).

Reproduced Record 55a (R.R. ———.) It is clear that the voter intended to cast a vote for Harold Kirschner for Supervisor and not for District Magistrate. The voter followed the instructions [9] to blacken the

oval and to write the name of the candidate "in the space provided."

However, Dayhoff contends that the Board should not have counted the five votes where a voter affixed a "Harold Kirschner" sticker on the line just above the word "Supervisor." He contends that, in the example above, the Kirschner vote was for District Magistrate.[10] The Board did not agree. In fact, the Board counted every vote for either candidate that was written close to the word "Supervisor." Recognizing that the line provided for writing-in a candidate's name was too small for many voters,[11] the Board was flexible in its application of the instruction to "use the space provided." We agree with the Board's approach.

As the reproduction above demonstrates, the ballot is separated into candidate "blocks" by a series of floating lines. It is difficult to discern one "block" from another. Nevertheless, each "block" contained the title of the office, the name of each candidate and, finally, a line for writing-in a candidate's name. Voters were instructed to "blacken the oval" next to the candidate's name and to write the candidate's name "in the space provided therefor." These instructions did not identify "the space provided" as a "block" or a "box." Further, the instructions did not specify that the "space provided" was the line next to the oval.

The Election Code supports the Board's decision. Section 1112–A,[12] added by the

---

9. The instructions are set forth, in relevant part, in footnote 16, *infra*.

10. Because there was a printed candidate's name in the District Magistrate oval, it was counted electronically. If Dayhoff's logic were to be followed, it would also require nullifying electronic votes cast for the District Magistrate.

11. The records shows that people wrote in names on a diagonal, practically filling the

Supervisor block. The reproduced ballot shows that even the printed sticker, smaller than most handwriting, was too large to fit on the write-in line.

12. It states:
 (b) In an election district which uses an electronic voting system which utilizes paper ballots or ballot cards to register the votes, the following procedures will be applicable for the conduct of the election at the election district: * * *

act of July 11, 1980, P.L. 600, is the relevant provision as it applies to paper ballots counted by an electronic voting machine, which is our situation.[13] Section 1112–A(b)(3)[14] directs the voter to "use the space provided therefor on the ballot" to write in the candidate's name.

All five of the stickers objected to by Dayhoff were placed on the line just above the word "Supervisor."[15] The line is logically construed as the "space provided therefor on the ballot" for the placement of the supervisor sticker. This satisfies Sec-

tion 1112–A(b)(3) of the Election Code, 25 P.S. § 3031.12(b)(3). We conclude that the trial court correctly overruled the objections of Dayhoff with respect to the five sticker votes placed on the line above the word "Supervisor."

██ Dayhoff next contends that the trial court erred by refusing to count eleven write-in votes for him where the voters had failed to take the additional step of blackening the oval provided on the ballot.[16] Again, we turn to Section 1112–

---

Section 1112–A of the Election Code, 25 P.S. § 3031.12(b). Here, the Director of Elections and Voter Registration, Monica Dutko (Dutko), testified that the Adams County Board of Elections uses an optical scan system to compute votes. Specifically, she stated that it is automatic tabulating equipment that examines and computes votes registered on paper ballots, which tabulate the votes. R.R. 157a.

13. There are a number of voting systems authorized and used in Pennsylvania elections, ranging from paper ballots (where votes are marked in pencil and placed into a shoe box) to a pure electronic voting system. Each voting system is subject to different statutory standards. Here, the voting system was a paper ballot that had to be marked in pencil for counting by electronic means. It is governed by Article XI–A of the Election Code, 25 P.S. §§ 3031.1–3031.22.

14. It states:
At all other elections, the voter shall vote for the candidates of his choice for each office to be filled according to the number of persons to be voted for by him for each office, by making a cross ( ) or check ( ) mark or by making a punch or mark sense mark in the square opposite the name of the candidate, or he may so mark the write-in position provided on the ballot for the particular office and, *in the space provided therefor on the ballot* and/or ballot envelope, write the identification of the office in question and the name of any person not already printed on the ballot for that office, and such mark and written insertion shall count as a vote for that person for such office.
Section 1112–A(b)(3) of the Election Code, 25 P.S. § 3031.12(b)(3) (emphasis added) (Pur-

don's has edited this provision to include the missing "√").

15. Indeed, the Board counted all votes where the writing or sticker appeared close to the word "Supervisor" or was located within the Supervisor block. Certain write-in votes that appeared in a location where they could be associated with the office of Supervisor were not counted, but for other reasons. On contested ballot # 12, the Board counted the vote for Kirschner even though his name was written in below the line provided for the write-in vote but within the supervisor block on the ballot. R.R. 40a. However, on Kirschner's contested ballots # 19, # 20, # 25, # 26 and # 27, the Board did not count these votes because the voter failed to blacken in the oval next to the Supervisor's name, not because the voter wrote in the candidate's name below the line provided for the write-in vote. R.R. 47, 48, 53, 54, and 59.

16. Dayhoff also contends that the instruction on the ballot to blacken the oval may have violated the Election Code because the Election Code does not refer to ovals. Here, the instruction on the ballot provided:

1. TO VOTE YOU MUST BLACKEN THE OVAL COMPLETELY. A oval blackened completely to the left of the name of the candidate indicates a vote for that candidate.
2. To write-in a name, you must blacken the oval to the left of the line provided, and write the name in the space provided for that purpose.
R.R. 29a–67a. However, the Court in *Oncken v. Ewing*, 336 Pa. 43, 47, 8 A.2d 402, 404 (1939) stated,

A(b)(3) of the Election Code to resolve this issue.

Section 1112–A(b)(3) specifically directs the voter to make a "mark." It lists a variety of possible marks a voter can make to identify the candidate of his choice: "... a cross *or* check mark *or* by making a punch *or* mark sense mark in the square opposite the name of the candidate, *or* he may so mark the write-in position provided on the ballot for the particular office *and* ... write the identification of the office *and* the name of any person not already printed on the ballot ... *and such mark and written insertion shall count as a vote* ...." [17] 25 P.S. § 3031.12(b)(3) (emphasis added). The trial court held that this statutory language required the voter to blacken the oval in addition to writing in the candidate's name. We agree.

Section 1112–A(b)(3) requires both a mark *and* a written insertion for a write-in candidate because votes are counted electronically. Without the mark, the elec-tronic device is not able to detect a write-in vote, and the vote cannot be counted. In this case it was possible to count paper ballots manually because it involved a relatively few number of ballots that were generated in a single township. If we waive the Section 1112–A(b)(3) requirement to make "a mark" for a write-in candidate, then a Board of Elections would be required to inspect by hand every ballot cast in a county looking for possible write-in votes.[18] This is not the result intended by the legislature, and it would create the opportunity for mischief sought to be avoided by electronic voting. We cannot waive this clear legislative directive in the Election Code.

Dayhoff directs us to another provision of the Election Code as authority for his position, *i.e.*, Section 1223(a) of the Election Code.[19] This provision states that any ballot indicating the name of a candidate by writing or by sticker "shall be counted as a vote ... whether or not an ( ) or

It is established generally throughout American jurisdictions that one who does not utilize the opportunity afforded by statute to object to irregularities in the ballot before the election may not raise objections thereto. It would be unjustifiable, and indeed intolerable, after the electorate has clearly expressed its will, for a court to declare an election null and void merely because of some inconsequential defect in the form of the ballot.

The court should nullify an election based on the form of the ballot only if it is so lacking in conformity with the law and so confusing that the voters cannot intelligently express their intention. *Id.* Here, the ovals that Dayhoff mentions are not so confusing that this Court should nullify the election.

17. *See supra* note 14.

18. The only exception would be for ballots with a straight Democratic or straight Republican vote.

19. Specifically, Section 1223(a) provides, in pertinent part,

Any ballot indicating a vote for any person whose name is not printed on the ballot, by writing, stamping or sticker, shall be counted as a vote for such person, if placed in the proper space or spaces provided for that purpose, *whether or not an ( ) or check ( ) is placed after the name of such person:* Provided, however, That if such writing, stamping or sticker is placed over the name of a candidate printed on the ballot, it shall render the entire vote in said office block void. Section 1223(a) of the Election Code, as amended, 25 P.S. § 3063(a) (emphasis added).

Although this provision does not refer to ballots used in an electronic voting system, Dutko testified that the write-in votes had to be counted manually or by hand by the county officers. R.R. 158a. Thus, this provision applies to the present case. Further, there is no language within this provision limiting its application to ballots counted manually; even if there was such a provision, it wouldn't matter because for the purposes of the office of Supervisor the ballots were counted manually.

check ( ) is placed after the name of such person." 25 P.S. § 3063(a). However, Section 1223(a) does not apply to the type of ballot at issue in this case. Section 1223(a) is found in Article XII of the Election Code, 25 P.S. §§ 3041–3070, which was enacted in 1937 when voters used either a paper ballot[20] or a voting machine[21] to vote. Section 1223(a) directs how paper ballots will be counted, including defective ballots. It does not require a "mark" because Section 1223(a) has no application to electronic ballots, which must have a mark in order for the machine to recognize a vote.

█ Article XI–A of the Election Code, 25 P.S. §§ 3031.1–3031.22, enacted in 1980,[22] governs voting by electronic voting systems.[23] The ballot at issue here was designed for electronic votes[24] and is, thus, governed by Article XI–A of the Election Code. This article specifically provides that where one of its provisions conflicts with another provision in the Election Code, the Article XI–A provision controls.[25] Section 1112–A(b)(3), which conflicts with Section 1223(a), is the controlling provision in this case, and it requires both a mark and a written name in order for a vote to be counted.

In the eleven votes that were not counted for Dayhoff, the voters failed to blacken in the oval for Supervisor. Although they wrote in Dayhoff's name on (or near) the line provided on the ballot, Section 1112–A(b)(3) provides that a mark *and* a written insertion must be made. In the absence of the oval being blackened, the votes could not be counted for Dayhoff. We affirm the trial court's decision on this objection by Dayhoff.

█ Finally, Dayhoff contends that the trial court erred in declining to count five ballots for him where the voters had either

20. A ballot is defined as, "ballot cards or paper ballots upon which a voter registers or records his vote or the apparatus by which the voter registers his vote electronically and shall include any ballot envelope, paper or other material on which a vote is recorded for persons whose names do not appear on the ballot labels." Section 1101–A of the Election Code, 25 P.S. § 3031.1.

21. The "voting machine" referenced is a mechanical device, not an electronic device. The statute provides that by using a voting machine, the voter will vote by operating the key, handle, pointer or knob, upon or adjacent to which the name of such candidate is placed. If a candidate does not appear on the ballot, the voter may, by irregular ballot containing the name of such person, deposit or affix the ballot in or on the machine provided for that purpose. Section 1216 of the Election Code, 25 P.S. § 3056.

22. Act of July 11, 1980, P.L. 600.

23. An electronic voting system means "a system in which one or more voting devices are used to permit the registering or recording of votes and in which such votes are computed and tabulated by automatic tabulating equipment." 25 P.S. § 3031.1. The system must provide for a permanent physical record of each vote cast. *Id.*

24. The Board did not program the automatic tabulating equipment to register votes for the Supervisor race in Mount Joy Township presumably because there were no names printed on the ballot. This was error. The record shows that the Board could have programmed the equipment for the Supervisor race, and it should have done so. R.R. 159a. Article XI–A is not the controlling provision; there is no statutory authorization for reverting to Article XII in these circumstances.

25. Section 1122 A provides:

The provisions of this article shall constitute an additional method of voting and all provisions of this act shall be construed to be in full force and effect *unless inconsistent with the provisions of this article.*

25 P.S. § 3031.22 (emphasis added). This is logical because Article XI–A is specific to electronic voting and later in time (enacted in 1986) than the rest of the Election Code, which was enacted in 1937.

misspelled his name or omitted his first name. The Election Code does not address how exact a write-in candidate's name must appear in order to be counted.[26] However case law precedent provides direction. In *Appeal of McCracken,* 370 Pa. 562, 567, 88 A.2d 787, 789 (1952), our Supreme Court held,

[T]hat where the voter's intent is found, it should not be defeated by the fact that the name of the candidate is misspelled, the wrong initials employed or some other or slightly different name of like or similar pronunciation has been written instead of that of the candidate actually intended to be voted for.

The record in this case supports the factual finding that the voters intended to vote for Samuel L. Dayhoff.

Monica Dutko, the Director of Elections and Voter Registration for Adams County (Director), testified that Samuel L. Dayhoff was the only Dayhoff running for the office of Supervisor, and he had been the Supervisor for six years prior to the election. In addition, no other Dayhoff had assumed local office or ran in local politics. The Director also testified that there are only two registered voters in the township with the last name Dayhoff spelled D–A–Y–H–O–F–F, Samuel L. Dayhoff and his wife, Ellen T. Dayhoff.

On the other hand, there are five voters registered in the county with the name spelled D–E–H–O–F–F, but none have the first name "Sam." Dayhoff testified that he received mail with his name spelled as D–E–H–O–F–F and that people often pronounce his name with this spelling. Further, Dayhoff testified that his grandfather spelled his name "Dehoff" as did his uncle, even though he never spelled his name in such a manner.[27]

The fact that there were other persons with the last name "Dayhoff" or "Dehoff" does not undermine a finding of voter intent. As explained by our Supreme Court in *Appeal of McCracken,*

. . . [A] ballot may be counted which contains a candidate's surname only although there are other persons in the borough having the same last name, it being shown that there was no other person of such name who was a candidate for the same or any other office.

370 Pa. at 566, 88 A.2d at 789. Here, there was no evidence that Dayhoff's wife or any of the five "Dehoffs" in Adams County were candidates for any office. It is apparent that the five votes at issue were intended for Dayhoff.

The Board did not explain why it refused to count votes for Dayhoff where his name was misspelled or his first name was

**26.** It simply requires "the name of any person not already printed on the ballot for that office...." Section 1112–A(b)(3) of the Election Code. *See infra* note 13.

**27.** Several cases support the principle that a write-in vote should be counted in spite of minor mistakes on the ballot where the facts show which candidates the voters intended to vote for. In *Nomination of Lamb,* 73 Pa. D. & C.2d 142 (1975), the court counted votes for Lamb even though the voters wrote-in different versions of his name where it found the following facts: there were four persons registered to vote in the township with the same surname; Lamb was the only candidate running for office as an incumbent; and Lamb conducted an aggressive campaign for the office where he met many potential voters. Also, in *Harer's Petition,* 49 Pa. D. & C. 344, 1944 WL 2151 (1944), the court counted votes for Warren Clyde Harer even though the voters wrote in different versions of his name where it found the following facts: there were four voters registered in the county with the surname of Harer but only one running for office whose first name began with a "W"; Harer was known by other names in the community; and Harer cashed checks with the bank that had several versions of his name written on them.

missing. We do not know if the Board misapprehended the law or could not discern, as a factual matter, voter intent. The trial court declined to decide this issue because even if it were decided in Dayhoff's favor, it would not affect the outcome of the vote. However, not to count these votes gives too much weight to a "technicality" against which result our Supreme Court warned in *Appeal of James.* We hold, therefore, that the Board should have counted the five ballots for Dayhoff where the voter omitted Dayhoff's first name or misspelled his last name. Such votes appear in a form sufficient to satisfy Section 1112–A(b)(3) of the Election Code.

 Dayhoff contends that we should not review the trial court's decision on Kirschner's fifteen objections because Kirschner did not appeal.[28] We disagree. Kirschner did not appeal because he was not aggrieved; he won the election once the casting of lots occurred. Further, Section 1407 of the Election Code provides that "The court on appeal *shall have full power and authority* to hear and determine all matters pertaining to any fraud or error committed in any election district to which such appeal relates, and to make such decree as right and justice may require...." Section 1407 of the Election Code, 25 P.S. § 3157(b). Fairness requires that we also review the trial court's decisions on Kirschner's objections.

Kirschner objected to the Board's decision on fifteen ballots at the recount proceeding. Kirschner objected to: 1) two votes counted for Dayhoff where the voters wrote Dayhoff's name in the District Magistrate block rather than the Supervisor block; 2) the Board's failure to count eight votes for Kirschner where the voters did not blacken the oval in addition to writing in his name; and 3) the Board's failure to count five votes for Kirschner where the voters had written in different versions of "Harold Kirschner."

The trial court correctly counted two ballots for Dayhoff when the voters wrote in Dayhoff's name in the District Magistrate "block" rather than the Supervisor "block." Like the stickers on Kirschner's contested ballots, the write-in votes were written, logically, on the line above the word "Supervisor." Because the voters wrote in Dayhoff's name "in the space provided," we conclude that they complied with the terms of Section 1112–A(b)(3) of the Election Code, 25 P.S. § 3031.12(b)(3).

The trial court also correctly refused to count eight ballots for Kirschner where the voters failed to blacken the oval but wrote in his name. As explained above, Section 1112–A(b)(3) of the Election Code requires a mark and a written insertion. Here, the voters failed to blacken the oval; accordingly, these ballots cannot be counted as votes for Kirschner.

The trial court should have counted the five ballots for Kirschner where his name was written as "Geo Kirschner" or only "Kirschner." The Director testified that

---

**28.** Dayhoff relies on *Appeal of McIntyre,* 343 Pa. 87, 22 A.2d 200 (1941). In *McIntyre,* two towns, Dunmore Borough and Burgess, held a primary election. After detecting voting fraud, a candidate in the Burgess primary appealed. The trial court threw out the election returns in both Dunmore Borough and Burgess even though no candidates from Dunmore appealed. The Supreme Court overturned the trial court's order and reasoned that the trial court must limit itself to matters raised by the appeal of the person aggrieved and cannot broaden its inquiry to investigate fraud in the election generally. Thus, the trial court erred by adjudicating on the returns in Dunmore. The present case differs from *McIntyre* because Dayhoff contends that the ballots were not counted properly for the supervisor position; all of the contested ballots related to the supervisor position are subject to review.

there are only two voters registered in the township with the last name Kirschner, Harold J. Kirschner and his wife, Linda J. Kirschner. Because Harold J. Kirschner was the only Kirschner running for Supervisor, the record supports the conclusion that these five ballots were intended for him. Thus, under *Appeal of McCracken,* these votes should have been counted.

 A change in the Board's determination on five votes for each candidate results in 313 votes for Dayhoff and 313 votes for Kirschner, still a tie vote. The trial court declined to consider the legal arguments raised by both candidates in the recount proceeding on the question of whether these ten votes were valid. It declined to rule because the question did not change the outcome of the Supervisor race. We agree. The trial court was correct in affirming the Board because the ten votes do not change the outcome of the vote; it remains a tie vote.

Accordingly, we affirm the trial court.

### ORDER

AND NOW, this 17th day of October, 2002, the order of the Court of Common Pleas of Adams County, dated December 10, 2001, in the above-captioned matter is hereby affirmed.

SMITH–RIBNER, J., files opinion concurring in part and dissenting in part.

Concurring and dissenting opinion by Judge SMITH–RIBNER.

I concur with the Majority's decision to allow the five paper ballots for Harold J. Kirschner that contained a sticker with his name inserted in the "District Magistrate" block instead of the "Supervisor" block and the five paper ballots for Samuel L. Dayhoff where the voters misspelled his surname or omitted his first name. I disagree, however, with the Majority's deci-

sion to disallow the eleven paper ballots for Dayhoff and the eight paper ballots for Kirschner simply because the voters failed to blacken the oval provided on the ballot next to the line where the candidates' names were written.

There is no dispute that the Adams County Board of Elections manually counted the write-in ballots. Likewise, there is no dispute that testimony from the Director of Elections and Voter Registrations, Monica Dutko, established that blackening of the oval made no difference in terms of registering the votes for a write-in slot and that a voter's failure to blacken the oval had no adverse affect on the election process or the ability of election officials to accurately count, compute and return the election results.

Section 1112–A(b) of the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, *as amended,* added by Section 4 of the Act of July 11, 1980, P.L. 600, 25 P.S. § 3031.12(b), provides in relevant part:

In an election district which uses an electronic voting system which utilizes paper ballots or ballot cards to register the votes, the following procedures will be applicable for the conduct of the election at the election district:

. . . .

(2) At primary elections, the voter shall vote for the candidates of his choice for nomination, according to the number of persons to be voted for by him, for each office by making a cross (X) or check (✓) mark or by making a punch or mark sense mark [sic] in the square opposite the name of the candidate, or ... write the identification of the office in question and the name of any person not already printed on the ballot for that office, and such mark and written insertion shall count as a vote for that person for such office.

Dutko testified that Adams County uses automated tabulating equipment to tabulate paper votes and that the automated system was not programmed to read or register any votes by reading or recognizing a blackened oval with regard to a ballot position that did not contain a ballot candidate. The trial court acknowledged as much, and because the challenged write-in votes for Dayhoff and Kirschner were not registered, tabulated or recorded by electronic means, I conclude that Section 1112–A(b) of the Pennsylvania Election Code clearly applies to this case.

Once the voters wrote in the names of Dayhoff or Kirschner, their votes should have been counted irrespective of the voters' failure to blacken the oval beside the candidates' names. The Pennsylvania Supreme Court in *Appeal of McCracken*, 370 Pa. 562, 88 A.2d 787 (1952), held without reservation that where a voter's intent is found, such intent should not be defeated. In affirming the elections board decision to count write-in ballots for a candidate whose name was not written in full, the Supreme Court reasoned that nothing can be more vital toward accomplishing an honest and just selection than ascertaining the intention of the voter.

Here, the intention of the nineteen voters cannot be clearer: eleven of them intended to vote for Dayhoff by writing his name on the ballot and eight of them intended to vote for Kirschner by writing his name on the ballot. These ballots were then counted manually, and the Director of Elections confirmed that the voters' failure to blacken the oval beside the candidates' names made no difference in registering their votes. This evidence demonstrates the voters' intent, and it also demonstrates that the election officials had no difficulty in ascertaining that intent. Yet despite this clear and unequivocal evidence, the Majority has chosen to disallow the nine-

teen write-in paper ballots on a mere technicality and to disenfranchise those nineteen voters who sought to participate in the democratic process. The Majority's decision is fundamentally at odds with the standard that the Supreme Court enunciated in *Appeal of McCracken.* Thus my dissent.