In re the Matter of the 2003 ELEC-
TION FOR JACKSON TOWNSHIP
SUPERVISOR, Six–Year Term.

**Appeal of Ben Kupchella.**

Commonwealth Court of Pennsylvania.

Argued Dec. 18, 2003.
Decided Dec. 19, 2003.
Publication ordered Jan. 20, 2004.

Russell J. Heiple, Johnstown, for appellant.

Calvin J. Webb, Ebensburg, for appellee.

OPINION BY Senior Judge KELLEY.

Ben Kupchella (Kupchella) appeals from a final order of the Court of Common Pleas of Cambria County (trial court), which determined that 89 contested votes cast for Jackson Township Supervisor,

Six–Year Term, were not "overvotes" and ordered that 86 of the 89 votes be added to the total number of votes received for candidate Dave Bracken (Bracken) and the other three be added to the total number of votes received for Kupchella. Bracken has filed a motion to quash the appeal. By order dated December 18, 2003, this Court denied the motion to quash and affirmed the order of the trial court. This opinion is filed in support of that order.

The present controversy arises from the 2003 election for Cambria County, Jackson Township Supervisor, Six–Year Term. Kupchella (D) and Bracken (R) were the only two nominees for the position. The punch ballot contained a third option for a write-in candidate. There was no candidate seeking a write-in for this office. The write-in instructions provided: "WRITE–IN PUNCH HERE—THEN PLACE STICKER OR WRITE CANDIDATES NAME AND OFFICE TITLE ON YOUR SECURITY ENVELOPE."

Cambria County utilizes the punch ballot voting method whereby the votes are tabulated by an electronic counting machine. At the close of the November 4, 2003 election, the vote tabulation showed that Kupchella had won the election by a margin of 62 votes. On November 12, 2003, Bracken requested a recount, which was granted. The manual recount was conducted on November 20, 2003. The recount revealed that 105 ballots were rejected by the electronic counting machine due to "overvotes."[1] Of the 105 ballots, 89 ballots had one of the two nominees punched along with another punch for write-in ballot, but no name or office was entered as a write-in.[2] Eighty-six of these ballots were punched for Bracken and three were punched for Kupchella.[3]

Before the trial court, the parties stipulated to the facts and presented argument. The trial court, sitting as both the court of common pleas and as the county board of elections, determined that the 89 contested ballots were not "overvotes" because the voters did not place a sticker or write a candidate's name or office in the designated area. By order and decree dated November 24, 2003, the trial court ordered that the contested votes be cast for the respective nominees. The net result of this order is that Bracken won the election by a margin of 21 votes.

From this decision, Kupchella filed a notice of appeal with this Court on December 3, 2003. In his appeal, Kupchella raises the issue of whether the trial court erred in counting the ballots which contained a punch for a nominee and a punch for "write-in" rather than voiding these ballots. Before considering the merits of Kupchella's appeal, this Court must first address the questions raised by Bracken's motion to quash the appeal as untimely filed.

Bracken asserts that Kupchella's appeal should be quashed on the basis that an appeal to the trial court from the county

---

1. An "overvote" occurs when the elector votes for more candidates for a given office than are to be elected. *In re Petition to Contest the General Election for District Justice in Judicial District 36–3–03 Nunc Pro Tunc*, 695 A.2d 476 (Pa.Cmwlth.1997), *petition for allowance of appeal denied*, 556 Pa. 715, 729 A.2d 1132 (1998).

2. The other 16 votes had cast a vote for both Kupchella and Bracken and were properly voided as overvotes.

3. The high number of write-in punches for Bracken is most likely attributable to the campaign he ran. Bracken campaigned as a team with candidate Bruce Baker. Baker ran a "write-in" campaign for Jackson Township Supervisor, Two–Year Term. The Bracken and Baker campaign stressed that it was necessary to "punch the write-in" in order to vote.

board of elections regarding the recount was not filed within 2 days after November 24, 2003 pursuant to Section 1407 of the Election Code.[4] We disagree.

■ The integrity of the election process requires immediate resolution of disputes that prevent certification. *In re Petition of Jones*, 464 Pa. 152, 346 A.2d 260 (1975). The Election Code reflects a clear intention of the General Assembly to expeditiously resolve election disputes and provide for the prompt certification of the vote. *Id.* Of relevance to this discussion is the time limitation for the filing of an appeal following a recount or recanvass. Section 1407 of the Election Code provides:

> (a) Any person aggrieved by any order or decision of any *county board* regarding the computation or canvassing of the returns of any primary or election, or regarding any recount or recanvass thereof under sections 1701, 1702 and 1703 of this act, may appeal therefrom *within two days after such order or decision* shall have been made, whether then reduced to writing or not, to the *court of common pleas of the proper county*, setting forth why he feels that an injustice has been done, and praying for such order as will give him relief.

25 P.S. § 3157(a) (emphasis added, footnote omitted).

Ordinarily, the county board of elections consists of the county commissioners. Section 301(b) of the Election Code, 25 P.S. § 2641(b). However, when an election year includes a race for county commissioners, the commissioners cannot serve on the election board. Section 301(c) of the Election Code. During such an election year, the judges of the court of common pleas may serve in their stead. *Id.*

■ In this case, due to the commissioners' election, the trial court was sitting as the county board of elections. As expressed in the decree and opinion issued November 24, 2003, the trial court was functioning in a hybrid capacity as both the court of common pleas and as the county board of elections. Significantly, the trial court constituted a majority of the Court of Common Pleas of Cambria County. The trial court was comprised of three judges; the full complement of judges for that judicial district is five. Thus, a majority of the Court of Common Pleas of Cambria County rendered a decision in this case. In this instance, requiring an aggrieved party to file an appeal with the "court of common pleas of the proper county" when the majority of that court issued a unanimous decision would constitute a "useless act" that would unnecessarily delay the expeditious resolution of the election dispute. As it is in the interest of the nominees as well as the public to facilitate the expeditious adjudication of election cases, this Court concludes that, under the circumstances presented, it was not necessary for Kupchella to file an appeal with the trial court.

Bracken also contends that Kupchella's appeal should be quashed as untimely because an election contest was not filed within 20 days after the election pursuant to Section 1756 of the Election Code, 25 P.S. § 3456.

Section 3456 of the Election Code provides:

> The commencement of proceedings in the case of contests of the second, third, fourth and fifth classes shall be by petition, which shall be made and filed, as herein required, *within twenty days after the day of the primary or election*, as the case may be. The petition shall

---

4. Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. § 3157.

concisely set forth the cause of complaint, showing wherein it is claimed that the primary or election is *illegal,* and after filing may be amended with leave of court, so as to include additional specifications of complaint. After any such amendment, a reasonable time shall be given to the other party to answer.

This section is inapplicable as Kupchella is not challenging the legality of the election, but whether the trial court erred in counting certain votes following the recount. Accordingly, Bracken's motion to quash was denied.

Having determined that Kupchella's appeal was timely filed, this Court shall now address the merits of his appeal. Kupchella contends that the trial court erred in counting the ballots which contained a punch for a nominee and a punch for "write-in" rather than voiding these ballots. The Court disagrees.

In support of his position, Kupchella relies upon *Dayhoff v. Weaver,* 808 A.2d 1002 (Pa.Cmwlth.2002), *petition for allowance of appeal denied,* 572 Pa. 767, 819 A.2d 548 (2003). In *Dayhoff,* this Court addressed the issue of whether write-in votes were valid votes where the voters inserted the name of the candidate, but failed to mark the ballot for write-in. Citing Section 1112A(b) of the Election Code, 25 P.S. § 3031.12(b),[5] we concluded that the Election Code required both a mark and a written insertion for a write-in candidate in order for the vote to count. *Dayhoff.* In reaching this conclusion, we observed that there is a delicate balancing act that must be applied between protecting a citizen's vote and satisfying the terms of the Election Code. *Id* We stated:

> The vote may be the central act in our democratic form of government. To advance the goal of free and fair elections, the legislature enacted the Election Code, and it is often said that in the interest of preventing fraud, the terms of the Election Code must be strictly enforced. E.g., *In re Luzerne County Return,* 447 Pa. 418, 290 A.2d 108 (1972). At the same time, the purpose of the Election Code is to protect, not defeat, a citizen's vote. Our Supreme Court has directed that technicalities should not make the right to vote insecure, but instead, the statute should be construed to indulge that right. *Appeal of James,* 377 Pa. 405, 105 A.2d 64 (1954). These principles are difficult to reconcile. On balance, we believe that they mean that the terms of the Election Code must be satisfied without exception but where, as a factual matter, voter intent is clear, questions should be resolved in favor of holding that the Election Code has been satisfied.

*Id.,* 808 A.2d at 1006.

▇▇ *Dayhoff,* however, is distinguishable from the case at hand. In *Dayhoff,*

---

5. *Added by* the Act of July 11, 1980, P.L. 600. This section provides:

> (b) In an election district which uses an electronic voting system which utilizes paper ballots or ballot cards to register the votes, the following procedures will be applicable for the conduct of the election at the election district:
>
> * * *
>
> (2) At primary elections, the voter shall vote for the candidates of his choice for nomination, according to the number of persons to be voted for by him, for each office by making a cross (x) or check (/) mark or by making a punch or mark sense mark in the square opposite the name of the candidate, or *he may so mark the write-in position provided on the ballot for the particular office and, in the space provided therefor on the ballot and/or ballot envelope, write the identification of the office in question and the name of any person not already printed on the ballot for that office, and such mark and written insertion shall count as a vote for that person for such office.*

25 P.S. § 3031.12(b) (emphasis added).

the write-in candidate's names were entered on the ballot; whereas here, no names were entered. Rather, 89 voters, in addition to punching the oval for the named nominee on the ballot, punched the oval for write-in. Not only was this situation not addressed in *Dayhoff*, but it is also not covered by the Election Code. As a result, we are left to examining the ballots to see whether the voter's intent can be clearly discerned. In this regard, we are guided by these words:

> The power to throw out a ballot for minor irregularities, like the power to throw out the entire poll of an election district for irregularities, must be exercised very sparingly and with the idea in mind that either an individual voter or a group of voters are not to be disfranchised at an election except for compelling reasons. * * * 'The purpose in holding elections is to register the actual expression of the electorate's will' and that 'computing judges' should endeavor 'to see what was the true result.' There should be the same reluctance to throw out a single ballot as there is to throw out an entire district poll, for sometimes an election hinges on one vote.

*Appeal of James*, 377 Pa. 405, 409–410, 105 A.2d 64, 66 (quoting *Appeal of Gallagher*, 351 Pa. 451, 454–455, 41 A.2d 630, 632 (1945)).

▪ Applying these same principles here, the Court believes that the voter intent expressed on the challenged ballots is unmistakably clear. Despite punching the hole for write-in, without entering a name of a write-in candidate, the voters have not voted for a write-in candidate. As a result, the voters have not cast a vote for two candidates. The contested ballots are not "overvotes" as that term is understood.

By punching the hole for a named nominee, the voters have selected only one candidate on the ballot for the office of Jackson Township Supervisor, Six–Year Term. The voters have clearly expressed their will to vote for a named nominee, not a write-in. As our Supreme Court has observed, "[m]arking a ballot in voting is a matter not of precision engineering but of an unmistakable registration of the voter's will in substantial conformity to statutory requirements." *Appeal of James*, 377 Pa. at 408, 105 A.2d at 65 (quoting *Appeal of Gallagher*, 351 Pa. at 456, 41 A.2d at 632). Not to count these votes would give too much weight to a technicality against which our Supreme Court warned in *Appeal of James*. *See Dayhoff*. We, therefore, conclude that the trial court did not err in ordering that these votes be added to the tabulation.

Accordingly, this Court affirmed the order of the trial court.

*ORDER*

AND NOW, this 18th day of December, 2003, the Motion to Quash filed by David Bracken is denied and the order of the Court of Common Pleas of Cambria County is affirmed.

An opinion in support of this order will follow.