**In re RECOUNT OF BALLOTS FOR the NOVEMBER 4, 2003 GENERAL ELECTION CANDIDATES FOR OFFICE OF DISTRICT JUSTICE, MAGISTERIAL DISTRICT 18–3–02**

**Appeal of Duane L. Quinn.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 13, 2004.

Decided Sept. 15, 2004.

Angelo A. Papa, New Castle, for appellant.

LaVieta Lerch, Sligo, for appellee.

BEFORE: PELLEGRINI, Judge, LEAVITT, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Duane L. Quinn (Quinn) appeals from an order of the Court of Common Pleas of Clarion County (trial court) arising out of a ballot recount of the November 4, 2003

general election for the Office of District Justice for Magisterial District 18–3–02 that found Nancy M. Kadunce (Kadunce) the winner of that election by one vote.

In the November 4, 2003 general election, both Quinn and Kadunce were candidates for District Justice for Magisterial District 18–3–02. The Clarion County Board of Elections' (Board of Elections) vote tally showed Quinn with 1,508 votes and Kadunce with 1,500 votes. On November 21, 2003, the Board of Elections posted and certified the above election results.

Pursuant to Section 1701 of the Pennsylvania Election Code (Election Code), Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. § 3261,[1] Kadunce sought a recount alleging fraud and error in the original counting of the ballots.[2] The trial court appointed a Recount Board[3] to conduct a recount of the 11 election districts that made up Magisterial District 18–3–02. The Recount Board filed a Report (Recount Report) with the trial court finding that both Quinn and Kadunce had received 1,508 votes resulting in a tie. The trial court accepted the report and authorized the filing of objections.

Quinn and Kadunce, as well as others, filed objections to the Recount Report. Quinn's objections to the Recount Report were aimed exclusively at the procedures employed by the Recount Board. He raised no objection to the Recount Board's counting or not counting of any specific ballot either for him or Kadunce.[4] Ka-

---

1. Section 1701 provides, *inter alia:* "(a) The court of common pleas, or a judge thereof, of the county in which any election district is located in which ballots were used, shall open the ballot box of such election district used at any general, municipal, special or primary election held therein, *and cause the entire vote thereof to be correctly counted* by persons designated by such court or judge...." 25 P.S. § 3261. (Emphasis added.)

2. Other petitioners filed 11 petitions for recount in the 11 election districts comprising Magisterial District 18–3–02. Despite the petitions for recount, the Board of Elections forwarded the certified results of the election for the District Justice position to the Pennsylvania Bureau of Elections and, in December 2003, Quinn was sworn into office. On or about January 9, 2004, Quinn, as intervenor, filed a motion to quash and/or dismiss all recount petitions and to stay any recounts and/or recanvassing based on his claim that the petitions were not timely filed. On that same date, the trial court issued an order summarily denying the stay. On March 30, 2004, the trial court issued an opinion and order dismissing Quinn's motion to quash the recount petitions.

3. The Recount Board consisted of Kim C. Kesner (Chairman Kesner), Esquire, who was designated Chairman of the Board; Dr. Robert Kerr; and Mary Jane Gallagher.

4. Specifically, Quinn's objections to the Recount Report consisted of the following:

7. (a) *Objections made by Quinn's counsel and/or watchers during the Recount were not completely recorded, and an incomplete transcript of the proceedings was made.*

(b) Objections to ballots raised by Quinn were not properly logged by the Recount Board.

(c) Not all of the members of the Recount Board employed the same procedure in examining the ballots during the counting process, and, as such, the counting of the ballots by the Recount Board was not uniform in application.

(d) At the direction of the Chairman of the Recount Board, only portions of the recount were recorded by the court reporter present during the recount.

(e) The Chairman of the Recount Board failed to indicate to the court reporter on numerous occasions when the parties were asserting challenges to ballots that the Recount Board was "on the record."

(f) As a result of the limited use of the court reporter to record the substantive discussions, especially on the first day, while the objections that were made by Quinn were noted by the court reporter, the conversation and discussion leading up to the objection was not recorded. The conversation prior to an objection is critical to a full understanding of the objection.

dunce objected to one ballot counted for Quinn in which ovals were blackened for both candidates and an "X" was placed over the oval beside Kadunce, and one ballot box in the Farmington West election district in which the Recount Board counted two less votes than originally tallied by the Election Board. Because she lost two

(g) The court reporter and Recount Board on the first day of the Recount failed to mark ballots that were challenged in any distinguishing way so they serve as exhibits for court proceedings thereafter. As such, there is no way at this point to determine what ballots were objected to on the first day of the recount other than for one challenged ballot, which was specifically marked by Chairman Kesner toward the end of the Monroe Township Recount.

(h) One of the watchers for Quinn present at the Recount on the first day asked the Chairman as to whether there was a means to identify the ballots by number because the challenged ballots were just being placed in a pile with all other ballots without being set aside or otherwise marked. No procedure to address this concern was adopted on the first day.

(i) The Recount Board failed to adopt a proper objection procedure on the first day. On the second day the Chairman indicated "on the record" that counsel for Quinn did not request that ballots be marked if challenged. However, Quinn submits that it was his responsibility to prepare a process for proper identification of challenged ballots during the Recount. In fact, the Chairman acknowledged his responsibility because on the second day he did provide a process by which all challenged ballots by both candidates were set aside.

(j) The initial process of opening the envelopes to remove the ballots for counting was confusing and susceptible to error.

(k) The Recount Board did not apply consistent rules as to method by which the actual ballots were examined during the recount process. Based on the reports of the representatives for Quinn, only approximately one-third of the ballots were consistently read from front to back. As a result, the Recount Board did not always note information from the front of the ballot prior to making a declaration as to what was on the back of the ballot. Because not all of the Recount Board members read the

votes in the Farmington West election district, Kadunce argued that two votes should have been added to her total.[5]

As to Kadunce's objection to the disputed ballot, copies of that ballot were introduced into evidence and they showed that the voter had darkened the oval beside ballots from back to front, there is a distinct possibility that objections that could have been asserted by Quinn were not made because of this.

(l) Some of the actual counting of certain ballots by the Recount Board turned out to be an error as discovered by the observers for Quinn and reported to the Recount Board. Quinn's representatives recorded different results for Paint Township than those of the Recount Board. Had Quinn's observers not requested a second count of Paint Township, the tally that was initially announced by the Recount Board would have been incorrect. As a result, since not all of the ballots that were manually counted were double-checked there is a possibility for human error in the recount.

(m) While the Recount Board indicates in the Report that it found no fraud manifest in the computation of the votes, the Recount Board failed to note in its Report that on several occasions it had to interpret the intent of some of the voters from marking on the ballots since they were not done in the proper manner. For example, in some instances an "X" was placed over the circle for the candidate versus having that circle filled in by the voter. In other instances, a "Yes" was placed after the name of the candidate rather than the circle before the candidate's name being filled in by the voter.

8. Quinn objects to the statement of the Recount Board that the results of its Recount are true and correct due to the fact that the procedures that it applied throughout the recount were not consistent, and for the other reasons set forth above.

(February 2, 2003 Objection of Duane Quinn To Report of Recount Board at 53–58 of Kadunce's Brief.)

5. Kadunce also objected to the Board of Elections counting 18 absentee ballots for Quinn because they were left unsecured but later withdrew those objections.

both Kadunce's and Quinn's names and then placed an "X" over the oval for Kadunce's name. As to the objection regarding the purported two missing votes for Kadunce from the Farmington West voting district, Sharon Roxbury, the Clarion County Director of Elections, explained that at the end of an election night, a metal lever was pushed up on the inside of each ballot box which closed the ballot-dropping slot, a paper seal signed by the judge of elections was placed over the slot, and then each box was locked before it was brought to the courthouse. Kadunce testified that on the morning of January 15, 2004, she noticed that the seal on the ballot box from the Farmington West precinct was half rolled back and the metal slot was open. She testified that the other boxes had seals that "were up and solidly in place or had a sticker completely over it." (Reproduced Record at 20a.)

In support of his claim that the procedure used by the Recount Board was deficient, Quinn presented the testimony of:

· George Campbell (Chairman Campbell), Chairman of the Board of Elections, who testified concerning the total number of votes and procedures used on election night. According to Chairman Campbell, there were no errors in the original count by the Board of Elections.

· Recount Board Chairman Kesner who testified that the Board of Elections counted 3,164 total ballots across all of the precincts and the Recount Board counted 3,166 total ballots across all of the precincts.[6] Chairman Kesner also indicated that all those present at the recount had a full opportunity to view

the ballots as they were being counted and, if someone requested to have a ballot passed to them, it "would have been handed to them. In fact, that occurred on a number of occasions." (Reproduced Record at 69a–70a.)

· Claude Hamilton, a watcher during part of the recount, who testified that he felt the Recount Board went too fast, but he did not make a request for them to slow down, did not make a request for them to show him any particular ballot, and did not feel the Recount Board was hiding ballots from the watchers. He did testify that he recalled the Recount Board giving instructions that watchers were allowed to ask them to slow down.

· Darlene Flick, who also watched part of the recount, testified that she could not see the ballots, but did not move to where she could see them. She also admitted that she was not present at the beginning of the recount when instructions were given to the watchers, and she was unaware that she could ask the Recount Board to see a particular ballot or slow down. She did state that she made a request for a precinct to be recounted to which the Recount Board complied.

Finding no error in the way the recount proceeding was conducted or the procedure the Recount Board used in examining and distinguishing the ballots, and finding, as the Recount Board did, no evidence of fraud, the trial court denied Quinn's objections and Kandunce's objection to claiming that she should have received two more votes from the Farmington West election precinct.[7] As to the issue of the disputed

---

6. Chairman Kesner also testified regarding the difference in total votes counted for the Farmington West precinct by the Recount Board versus the Board of Elections. He indicated that the Recount Board counted Farmington West ballots three times and

came up with a total of 370 ballots, whereas the total ballots the Board of Elections counted for the Farmington West precinct was 372.

7. The trial court's findings are entitled to the fullest credit because it has had the opportu-

ballot, finding that the intent of the voter from Monroe Township was unclear and could not be determined from the ballot because he or she had darkened both the oval beside Kadunce's name and the oval next to Quinn's name and then placed an "X" over the oval for Kadunce's name, the trial court concluded that the ballot could not be legally counted for either Quinn or Kadunce and nullified the Recount Board's action of counting the ballot for Quinn. Based on those findings, the trial court accepted the Recount Board's Recount Report, except for the vote computation for one ballot from Monroe Township that had two ovals marked, and pursuant to Section 1703(a)(2) of the Election Code,[8] ordered that the total vote in the election for District Justice Magisterial District 18–3–02 be corrected and computed to be 1,508 votes for Kadunce and 1,507 votes for Quinn.[9] Quinn then filed this appeal.[10]

On appeal, Quinn initially contends that because the discrepancy in the total number of votes as reported by the Board of Elections in the certified original count versus those reported by the Recount Board was not examined by the trial court, the Recount Report should not have been certified and that the original vote total as certified by the Board of Elections should be accepted. What this argument ignores is that this objection was never raised below.

If a candidate believes that the Recount Board made a mistake in the way the votes were cast, the candidate is obligated to specify and establish where the Recount Board made the mistake. Quinn's objections to the Recount Report were aimed exclusively at the procedures employed by the Recount Board. He did not raise any specific objection to the Recount Board's counting or not counting of any specific ballot or to the Recount Board's tallying of any particular vote or votes for Kadunce; nor did he allege or present any evidence that any fraud had occurred during or before the recount of the ballots. It is not up to the trial court to examine issues not raised, and by failing to allege any mistake made in the actual recounting of ballots, Quinn has waived that argument.[11]

---

nity to inspect and pass upon the validity of each of the ballots and to make necessary corrections when palpable fraud or error appeared. *See Fishingcreek Township Election Case*, 144 Pa.Super. 277, 19 A.2d 491 (1941).

8. Section 1703(a)(2) of the Election Code then states:

If any petition to open a ballot box or to recanvass the votes on a voting machine shall have been presented, ... and the court shall discover therein any fraud or error, the court shall correct, compute and certify to the county board the votes justly, regardless of any fraudulent or erroneous entries made by the election officers thereof, and the county board shall correct accordingly any entries previously made in the returns of the county being prepared by it, or which have been prepared and not yet certified.
25  P.S. § 3263(a)(2).

9. The trial court pointed out that Quinn had argued a number of points at the hearing and

in his brief which were not included in his filed objections, but went on to address those issues only "in the interest of looking at such points and disposing of them." (May 27, 2004 opinion of the trial court, Reproduced Record at 261a.)

10. Our scope of review in election contest cases is limited to an examination of the record to determine whether the trial court committed errors of law and whether the court's findings were supported by adequate evidence. *In re Petition to Contest Primary Election of May 19, 1998*, 721 A.2d 1156 (Pa. Cmwlth.1998).

11. It has long been settled that issues which are not raised in the trial court are deemed to have been waived on appeal. *See* Pa. R.A.P. 302.

Quinn also argues that the trial court erred in reversing the decision of the Recount Board by declaring that the disputed ballot from Monroe Township be invalid and reducing his total votes by one. Section 1223 of the Election Code governs what ballots should be counted in elections and defective ballots. It states that, "If an elector shall mark his ballot for more persons for any office than there are candidates to be voted for such office, or if, for any reason, it may be impossible to determine his choice for any office, his ballot shall not be counted for such office, but the ballot shall be counted for all offices for which it is properly marked." 25 P.S. § 3063.

In this case, the trial court directed the Chairman of the Recount Board to retrieve and make copies of the Monroe Township ballot that was at issue in Kadunce's second objection. The trial court found that the voter had darkened both the oval beside Kadunce's name and the oval next to Quinn's name and then placed an "X" over the oval for Kadunce's name. Although it could have been concluded that the "X" was evidence of the voter's intention to cross out the vote for Kadunce, thereby leaving Quinn's darkened oval as a vote for him, it could have also been concluded that the "X" was intended to emphasize a vote for Kadunce, distinguishing the vote from the two darkened ovals. Because it was impossible to determine the intent of the voter from the ballot, the trial court did not abuse its discretion or commit an error of law when it found that the ballot could not be legally counted for either Quinn or Kadunce and nullified the Recount Board's action of counting the ballot for Quinn.

Accordingly, based on the well-reasoned and thorough opinion of the Honorable Carson V. Brown, sitting by special assignment for the Court of Common Pleas of Clarion County, the order of the trial court is affirmed.

### ORDER

AND NOW, this *15th* day of *September,* 2004, the Order of the Court of Common Pleas of Clarion County at CV Nos. 1528–2003 through 1538–2003, dated May 27, 2004, is affirmed.