J-S81025-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| B.J.S. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|     Appellant | |
| v. | |
| D.F.K. | |
|     Appellee | No. 1005 MDA 2017 |

Appeal from the Order Entered May 19, 2017
In the Court of Common Pleas of Columbia County
Domestic Relations at No: 00306-DR-2009, PACSES NO. 421111164

BEFORE:  PANELLA, STABILE, and PLATT,[*] JJ.

MEMORANDUM BY STABILE, J.:                 **FILED APRIL 20, 2018**

Appellant, B.J.S. ("Mother"), appeals from an order dated May 19, 2017 that recalculated the child support obligation of D.F.K. ("Father").  The trial court lacked jurisdiction to enter this order, because the record in this case had not yet been remanded to the trial court from Mother's prior appeal to this Court at 1293 MDA 2016.  Thus, we quash Mother's appeal from this order.  We also take the opportunity to make several observations that might assist the trial court during further proceedings in this case.

---

[*] Retired Senior Judge assigned to the Superior Court.

## PROCEDURAL HISTORY

**I. Background.** Mother and Father married in 1999 and separated in 2009. Two children were born during the marriage in 2002 and 2006.

In September 2009, Mother filed a complaint for child support and spousal support. On November 4, 2009, Mother obtained a child support award in the amount of $1,005.12 per month. The court did not award Mother spousal support.

In early 2015, Mother filed a petition for modification. On December 17, 2015, a master held a hearing during which Mother presented testimony regarding unreimbursed medical and tutoring expenses. Father testified about his income from wrestling camps that he operated and defended discrepancies between his total bank deposits and the income he claimed in his federal taxes. Father attributed the discrepancies to money he earned from investments and contributions by his paramour, L.C., to a shared credit account. On March 24, 2016, the master held a second hearing in which Mother and Father provided further detail regarding their income and child-related expenses.

On March 31, 2016, the master authored a recommendation and report awarding Mother child support of $764.68 per month. The master calculated this award using an agreed-upon monthly earning capacity for Mother of $2,164.70. The master determined that Father's monthly earning capacity was $5,096.92 by averaging his Schedule C net income for 2013, 2014 and 2015. Utilizing the support guidelines, the master arrived at a child support

award of $955.98 per month, which it deviated downward pursuant to Pa.R.C.P. 1910.16–5 due to substantial other income in Mother's household provided by her current husband, G.S. The master made an additional twenty percent reduction pursuant to Pa.R.C.P. 1910.16–4(c) due to Father's significant period of partial custody.

Mother filed exceptions to the master's recommendation and report, and by order dated July 25, 2016, the trial court denied and dismissed her exceptions. The court adopted the master's report and confirmed the previously calculated child support award. Mother appealed to this Court at 1293 MDA 2016. Mother filed a brief in this Court; Father did not.

**II. This Court's May 4, 2017 memorandum.** In a memorandum dated May 4, 2017, this Court vacated the trial court's order and remanded for further proceedings. We held:

> [W]e find the court did not abuse its discretion in deviating from the support guidelines in regards to Father's substantial partial custody or L.C.'s contributions to Father's household expenses. The court did err in calculating Father's income, applying a deviation from the guidelines based on G.S.'s 2013 income, and failing to attribute to Father his proportionate share of the childrens' tutoring expenses. Accordingly, we vacate the support order and remand for recalculation of Father's net income and support obligation in accordance with this memorandum.

*B.J.S. v. D.F.K.*, 1293 MDA 2016, at 15-16 (Pa. Super., May 4, 2017).

We rejected Mother's argument that the trial court erred in reducing Father's child support obligation by twenty percent due to "substantial or shared physical custody." *Id.* at 6-8. We held that the trial court's ruling on

- 3 -

this subject was supported by Father's credited testimony that he exercised custody over the children 43½ percent of the year. *Id.* at 7-8.

On the other hand, we held that the trial court erred in calculating Father's income. We reasoned:

> Mother alleges that Father's bank records showed deposits of approximately $141,000[.00] for 2014. However, Mother continues, Father only reported a net income of $68,000[.00], after deducting his business expenses of approximately $30,000[.00] . . . Hence, she concludes that the trial court miscalculated Father's income, and that he should be assessed a higher monthly income than what was utilized in arriving at his support obligation.
>
> The master's report and recommendation included the following findings of fact with regard to Father's income:
>
> 1. Father's [wrestling] camp income was only [$]696[.00] in 2015, and no camps planned [sic] for 2016. Not assigning income from this in making this recommendation.
>
> 2. [Father's] business fluctuates. Gross income varies, but expenses are similar year-to-year. Using average of past 3 years income in this recommendation.
>
> 3. [Mother] presented evidence of $141,000[.00] in cash flowing through [Father's] bank [account]. [Master was] not persuaded that this was all from his business. However, for sake of argument, even if there was some [additional] business income, you need to subtract business expenses to get net. That net would be subject to self-employment taxes in addition to income taxes, resulting in much lower amount than the $8,948 net/month proposed by [Mother].
>
> Master's Report, 3/31/16, at unnumbered 3. The trial court adopted this position, observing, "[Father's] income was properly calculated . . . [t]he cash flow through [Father's] bank accounts does not alter this figure, as [Father] had adequate credible explanations (e.g., holding his [m]other's investments for placements[.] )" Final Order, 7/25/16, at unnumbered 1 n.1. As it stands, the master attributed Father's additional income to his

business, and the trial court attributed the difference to cash he received on behalf of his mother. We find that the record does not support either of these findings.

Instantly, Mother presented evidence of a discrepancy between Father's reported 2014 income and the deposits in his sole bank account. N.T. Modification Hearing, 12/17/15, at 35–36, 70. Mother noted that Father had deposits totaling $141,617.83 in 2014, but he had reported income from his business tallying only $96,908[.00]. *Id.* at 70. When asked to explain the difference, Father averred, "I may have liquidated some investments—moved them into my account and reinvested them. Stuff like that." *Id.* at 71. Father conceded that some of the difference was due to his income from wrestling camps, but when he was pressed to explain the remainder, he stated, "I am thinking [I liquidated] other investments." *Id.* at 72. In addition, Father acknowledged that half of a $26,661.13 deposit in 2015 was his portion of a shared investment with his mother. *Id.*

We find the trial court erred in failing to include Father's deposits from his investments as income. Father's testimony indicated that he obtained large cash payments from his investments in 2014 and 2015. Although he did not explain the nature of his investments, in light of the expansive definition of "income" provided under the guidelines, we find Father's proceeds from his investments should have been included in the child support calculation. *See* 23 Pa.C.S. § 4302 (income includes, *inter alia*, "income derived from business; gains derived from dealings in property . . . [and] dividends"); *Spahr v. Spahr*, 869 A.2d 548, 552 (Pa. Super. 2005) (observing, "When a payor spouse owns his own business, the calculation of income for child support purposes must reflect the actual available financial resources of the payor spouse."). Since Father testified that the discrepancy in his cash flow and reported income was due to his investments, the master erred in determining the discrepancy could be explained as additional, yet unaccounted for, business income. Moreover, the trial court erred in finding the money merely represented his mother's investments. Simply, the record does not substantiate these conclusions.

For the same reason, the court erred in failing to consider Father's wrestling camp earnings, as minimal as they may be. Father retained earnings from his work operating a wrestling camp. Father, himself, proffered evidence indicating that he earned

$1,143[.00] in 2014, and $696[.00] in 2015 as a result of those efforts. Those earnings should be included in Father's income calculation.

*Id.* at 8-12.

We further held that the trial court abused its discretion in deviating from the support guidelines by considering the income of Mother's current husband, G.S., because there was no evidence submitted into the record on this subject. *Id.* at 13.

On June 13, 2017, this Court remanded the record at 1293 MDA 2016 to the trial court.

**III. Trial Court's May 19, 2017 opinion and order.** On May 19, 2017, several weeks before this Court remanded the record to the trial court, the trial court issued an opinion and order in response to our May 4, 2017 decision. The trial court stated that our decision required it to determine the amount of Father's investment income and wrestling camp earnings. The court confined its analysis of these issues to the transcripts from the December 17, 2015 and March 24, 2016 hearings and documents admitted into evidence during these hearings. It declined to admit other documentary evidence, such as bank statements that Mother's attorney used to cross-examine Father.

With regard to Father's investment income, the court placed heavy weight on (1) Father's 2014 tax return, which reported $750.00 as dividend income and $14.00 as capital gain income, totaling $764.00 and (2) Father's 2015 tax return, which reported no dividend or capital gain income. The court

also summarized Father's testimony concerning his investment income as follows:

> Father testified that he had "other investments" and stated that he transfers these investments through his checking accounts. When referring to these "other investments," Father was not asked, nor did he state, the income level or principal value of those particular investments. Father explained that he handles his mother's investments, and that these investments were "underperforming" and he and his mother "decided to do something about it. We closed it and she sent the money down to me and I'm going to invest it down here in this area." This asset was in Father's name since about 1993 or 1994, during which time he was married to Mother. Father testified that he intended to keep this asset for [his] mother and not liquidate it. This amount was reflected in a deposit of $26,661.13 on Father's September 30, 2015 bank statement of which half was Father's. in attempting in good faith to explain deposits into his account two (2) years after the fact with no preparation, Father testified: "I may have liquidated some investments—moved them into my account and reinvested them. Stuff like that . . . I don't know. I am thinking liquidating other investments."
>
> That is the extent of the record expressly dealing with "investment income."

Trial Ct. Op. 5/19/17, at 7-8.[1]

---

[1] In another passage, the court described Father's testimony as credible and attributed his inability to remember bank deposits to the passage of time:

> Father ran all gross receipts from his business, all business expenses and all personal disbursements in and out of his checking account. It is beyond fairness to show someone in business their checking account statement for a given month two years prior and to expect them to recollect with complete certainty the nature of a particular deposit at that time.

*Id.* at 2 n.1.

The trial court "accept[ed] as credible and of greatest weight the information on Father's tax returns." *Id.* at 8; *see also id.* at 6 (Father's tax returns were credible "given the reliable regularity of reporting interest, dividends and investment sales via Form 1099's and the penalties for not reporting same"). The court thus found Father's investment income to be $764.00, or $63.67 per month.

With regard to wrestling camp income, the trial court determined that Father made net income before taxes of $1,143.00 in 2014 and $696.00 in 2015. The court found that the drop in net income was the result of market conditions, not Father's voluntary choice, so it set Father's earning capacity for wrestling camp income at the 2015 level of $696.00 per year, or $58.00 per month.

Adding Father's monthly investment income and monthly wrestling income together, the court raised Father's monthly earning capacity by $112.67, from $5,096.92 to $5,218.59. The court stated:

> No matter how one computes it, the record does not support a conclusion by this fact finder (given consideration of the totality of the record, consideration of only that evidence which we find to be credible and according evidence deemed to be credibie the weight we deem it to deserve[]) that Father made $141,617.00 in deposits in 2014 . . . These deposits are not accepted as credible proof, nor proof of any significant weight, of Father's "investment income."

*Id.* at 5.

Next, the trial court determined:

The Superior Court held that, despite evidence that Mother's husband is an attorney who is gainfully employed, we are not to accord a deviation from the guidelines on account of Mother's husband's income. We granted a 20% deviation in favor of Father on two (2) bases: (1) [e]rroneously considering Mother's husband's income; and (2) on the basis of Father's summer child care expenses. The latter basis was not disturbed on appeal in that Mother did not preserve it as a ground for appeal in her [e]xceptions. On the basis of Father's child care expenses, it is hereby determined that a 10% deviation is appropriate.

*Id.* at 9-10.

Utilizing the support guidelines, the trial court calculated Father's child support obligation as $1,033.01 per month, which it reduced by ten percent to $929.71 per month. *Id.* at 11.

On June 15, 2017, Mother filed a notice of appeal. Mother raises the following issues in her appellate brief:

I. Whether the trial court abused its discretion by failing to strictly follow the Superior Court's order to vacate the court of common pleas' order dated July 25, 2016 and to include all [of Father]'s income including investment income and wrestling camp income which has been calculated to be $141,617.83, as directed, when calculating [Father]'s child support allegation.

II. Whether the trial court erred in awarding a substantial custody deviation in this case in light of the lower court's order granting the inclusion in the record of the July 1, 2014 and June 1, 2015 custody orders which clearly demonstrates that [Father] does not exercise 40% or more of the custody of the minor children.

III. Whether the trial court erred in awarding a child care deviation in this case as it is not supported by any evidence presented and it is unreasonable to award a deviation for child care for children of this age.

IV. Whether the trial court erred when it failed to award unreimbursed medical expenses for the children, which were preserved by [Mother] by presenting the unreimbursed medical

expense evidence to the Columbia County Domestic Relations Office.

Mother's Brief at 5.

## DISCUSSION

The trial court lacked jurisdiction to enter the May 19, 2017 order, because as of that date, the Superior Court had yet not remanded the record back to the trial court. *See Stanton v. Lackawanna Energy, Ltd.*, 915 A.2d 668 (Pa. Super. 2007); *Bell v. Kater*, 839 A.2d 356 (Pa. Super. 2003).

To place *Bell* and *Stanton* in context, we summarize relevant rules of appellate procedure. Pa.R.A.P. 1701 states that "after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter." Pa.R.A.P. 1701(a). "The effect of [Rule 1701(a)] is that once a party has properly appealed a decision of the trial court, the trial court lacks jurisdiction to act further on the case." *Commonwealth v. Moore*, 715 A.2d 448, 452 (Pa. Super. 1998). Rule 1701(a) ceases to apply once the appellate court remands the record to the lower court. Pa.R.A.P. 2591(a). Once the record is remanded, "the court or other government unit below shall proceed in accordance with the judgment or other order of the appellate court." *Id.*

Pa.R.A.P. 1701(b) provides a limited number of exceptions to Rule 1701(a)'s general rule divesting the trial court of jurisdiction during the pendency of an appeal. Specifically, the trial court may (1) "[t]ake such action as may be necessary to preserve the status quo, correct formal errors in

- 10 -

papers relating to the matter, cause the record to be transcribed, approved, filed and transmitted, grant leave to appeal in forma pauperis, grant supersedeas, and take other action permitted or required by these rules or otherwise ancillary to the appeal or petition for review proceeding"; (2) "enforce any order entered in the matter, unless the effect of the order has been superseded . . ."; (3) grant reconsideration of the order which is the subject of the petition if a timely motion for reconsideration is filed and the trial court enters a timely order expressly granting reconsideration; (4) "[a]uthorize the taking of depositions or the preservation of testimony where required in the interest of justice"; (5) "[t]ake any action directed or authorized on application by the appellate court"; and (6) "[p]roceed further in any matter in which a non-appealable interlocutory order has been entered . . . ." Pa.R.A.P. 1701(b).

*Bell* and *Stanton* provide illuminating illustrations of these principles. In *Bell*, the defendant filed an untimely notice of appeal following entry of judgment in favor of the plaintiffs. Subsequently, realizing that her appeal was untimely, the defendant filed a petition in the trial court for leave to appeal *nunc pro tunc.* The trial court granted the defendant's petition; coincidentally, on the same date, this Court quashed the defendant's first appeal. The defendant filed a second appeal in reliance upon the trial court's order granting her leave to appeal *nunc pro tunc*.

This Court quashed the second appeal, reasoning that under Rule 1701(a),

> [t]he trial court's order . . . which granted [the defendant] leave to appeal *nunc pro tunc*[] is a nullity because it was entered at a time when the trial court did not have jurisdiction—*i.e.*, the order was entered after [the defendant] filed her first notice of appeal with this Court and before the record was remanded to the trial court pursuant to Pa.R.A.P. 2591(a). Rule 2591(a) indicates that Rule 1701(a) "shall no longer be applicable to the matter" once the record is remanded. Since the record had not yet been remanded at the time the trial court entered its order granting [the defendant]'s appeal *nunc pro tunc*, the trial court did not have jurisdiction to enter such order and, therefore, such order is void. *See Commonwealth v. Bishop*, 829 A.2d 1170, 1172 (Pa. Super. 2003) (concluding that trial court lacked jurisdiction to convene a bail hearing and consider the merits of petition seeking bail where record had not yet been remanded from appellate court).
>
> Moreover . . . we conclude that Rule 1701[(b)] provides no exceptions that would have permitted the trial court to enter a valid order granting leave to appeal *nunc pro tunc* following [the defendant]'s filing of her first notice of appeal. In other words, we have no basis upon which to conclude that the trial court's order granting leave to appeal *nunc pro tunc* is anything other than a nullity.

*Bell*, 839 A.2d at 358.

In *Stanton*, a power company purchased an easement on an energy company's land and constructed a swing-arm gate on the easement. A ten-year-old boy collided with the swing-arm gate while riding a motorbike. The boy's parents filed a personal injury action against, *inter alia*, the power company. The power company moved for summary judgment on the ground that it was immune under the Recreational Use of Land and Water Act ("RULWA"), 68 P.S. §§ 477–1—477–8, which bars liability against owners of

unimproved land who open that land without charge for recreational use by members of the public. The trial court denied the power company's motion for summary judgment, but the power company obtained leave from this Court to take an interlocutory appeal from the trial court's order. This Court reversed and remanded for entry of summary judgment, ruling that the power company was an owner and that it did not act willfully or maliciously. On March 3, 2003, the trial court entered an order granting summary judgment to the company.

On March 13, 2003, the plaintiffs filed a timely petition for allowance of appeal to the Supreme Court from this Court's order of reversal. The Supreme Court granted *allocatur* solely on the question of whether the energy company was an owner under the RULWA. On November 23, 2005, the Supreme Court upheld this Court's decision that the company was an owner. In a footnote, the Supreme Court observed that there was another issue that had not yet undergone appellate review: whether the swing-arm gate constituted "land" under the RULWA. The Court continued:

> The Superior Court's mandate in this case, which this Court affirms, directs the trial court to enter judgment in favor of [the power company]. Upon entry of that order, the [plaintiffs] will be out of court, and will be free, if they so desire, to seek to appeal that final order to secure appellate review of the question concerning the swing-arm gate.

*Stanton*, 915 A.2d at 671 (citing ***Stanton v. Lackawanna Energy, Ltd.***, 886 A.2d 667, 678 n.10 (Pa. 2005)).

- 13 -

On December 3, 2005, the trial court entered a second order that granted summary judgment in favor of the power company. On December 8, 2005, the plaintiffs appealed to this Court with regard to whether the swing-arm gate constituted land under the RULWA. The power company argued that the plaintiffs "waived" this issue by failing to take a timely appeal from the trial court's March 3, 2003 order. We rejected the power company's argument, because

> [w]hen the trial court entered this order, the Superior Court had not remanded the record to the trial court, nor could it have. Rule 2572(a) instructs that "[t]he record shall be remanded to the court or other tribunal from which it was certified at the expiration of 30 days after the entry of the judgment or other final order of the appellate court possessed of the record." Pa.R.A.P. 2572(a). Additionally, the Rules prescribe that the pendency of, *inter alia*, a petition for allowance of appeal shall stay the remand until the petition's disposition. Pa.R.A.P. 2572(b). If the Supreme Court grants the petition for allowance of appeal, the Superior Court Prothonotary must transmit the record to the Supreme Court. Pa.R.A.P. 1122. Herein, [the plaintiffs]' decision to file a petition for allowance of appeal stayed the remand of the record to the trial court and, once the Supreme Court granted the petition, the Superior Court transmitted the record to the Supreme Court. The Supreme Court did not return the record to the trial court until it resolved [the plaintiffs]' appeal. Thus, it would appear that the trial court lacked jurisdiction to enter the March 3, 2003 order.

**Stanton**, 915 A.2d at 672.

We further held that none of the exceptions within Rule 1701(b) applied:

> The trial court's March 3, 2003 order did not preserve the status quo or correct a formal error; the order declared that [the plaintiffs] could not recover as a matter of law on claims that the trial court had previously deemed worthy of trial. *See* Pa.R.A.P. 1701(b)(1), Note (stating that "[s]ubdivision (b)(1) ... is not intended to permit fundamental corrections in the record"). Further, the March 3, 2003 order did not enforce a prior order of

- 14 -

the trial court, did not timely grant reconsideration, and did not authorize depositions. Likewise, our Court did not direct or authorize the trial court to enter the order while our Court retained the record and awaited the filing of a petition for reconsideration/reargument or for allowance of appeal. Finally, as our Court had granted [the power company] permission to appeal, the trial court did not have the authority to proceed under the sixth exception.

*Id.* at 673. Thus, the trial court's March 3, 2003 order was void. *Id.*

We further held that the trial court's December 3, 2005 order was void:

the Supreme Court filed an opinion on November 23, 2005 that affirmed the Superior Court's February 26, 2003 order. The Supreme Court remanded the record to the trial court on December 19, 2005. *See* Pa.R.A.P. 2572(b); 2573. Nevertheless, the certified record reveals that the trial court entered an order granting [the power company's] motion for summary judgment on December 3, 2005, sixteen days before the trial court received the record. As the remand of the record obviates the jurisdictional impediments imposed by Rule 1701(a), *see* Pa.R.A.P. 2591(a), and as no exceptions to Rule 1701(a) apply, we may only conclude that the trial court lacked the authority to enter the order . . . The December 3, 2005 order is a legal nullity . . . and cannot constitute a final order for appeal.

*Id.* Because the December 3, 2005 order was void, "[the plaintiffs'] notice of appeal, filed December 8, 2005, is premature. Although the trial court has an obligation to enter the order granting the motion for summary judgment, it must await the restoration of its jurisdiction before doing so." *Id.* Accordingly, we quashed the plaintiffs' appeal as "prematurely filed." *Id.*

In the present case, this Court remanded for further proceedings in its memorandum filed on May 4, 2017. On May 19, 2017, before this Court remanded the record, the trial court entered an opinion and order revising Father's support obligation. Under Rule 1701(a), and under **Bell** and

*Stanton*, the trial court lacked jurisdiction to enter its opinion and order because this Court had not yet remanded the record to the trial court. Indeed, this Court could not have remanded the record on or before May 19, 2017, because Pa.R.A.P. 2572(a) required us to retain the record until thirty days after entry of our judgment. Further, none of Rule 1701(b)'s exceptions applied. The May 19, 2017 opinion and order did not preserve the status quo or correct a formal error, enforce a prior order of the trial court, timely grant reconsideration, authorize depositions, or take any action that this Court directed or authorized on application. Neither did the trial court enter its opinion and order following an appeal from a non-appealable interlocutory order. For these reasons, the May 19, 2017 opinion and order is a nullity, *Bell*, 839 A.2d at 358; *Stanton*, 915 A.2d at 673, and we must quash Mother's appeal from this order.

Because the May 19, 2017 order is void, the trial court must again decide Father's support obligation **after** remand of the record, the event that will restore jurisdiction in the trial court. Pa.R.A.P. 2591(a). We cannot direct the trial court on what support decision to reach, for that would usurp the trial court's role as factfinder. We will, however, offer several points that the trial court might consider during further proceedings.

First, the trial court stated in its May 19, 2017 opinion that (1) it found Father's testimony "credible" and placed heavy weight on his tax returns; (2) this evidence showed that Father earned $764.00 in investment income in

2014 and no investment income in 2015; and (3) therefore, Father's annual investment income was $764.00, or $63.67 per month for support purposes. We note that our May 4, 2017 memorandum states: "Father's testimony indicated that he obtained **large cash payments from his investments in 2014 and 2015**." ***B.J.S. v. D.F.K.***, 1293 MDA 2016, at 10 (emphasis added). Because our memorandum is the law of this case, ***see Commonwealth v. Starr***, 664 A.2d 1326, 1331 (Pa. 1995), the trial court's findings should be consistent with this determination in our memorandum.

Second, in its May 19, 2017 opinion, the trial court confined its review to the existing evidence and declined to admit further evidence or testimony into the record. We note that our May 4, 2017 memorandum did not prohibit the trial court from admitting additional testimony or documentary evidence, *e.g.*, the bank statements that Mother's attorney used to cross-examine Father or checks (if any) that Father deposited into his account. Thus, the trial court might consider admitting additional evidence during further proceedings. ***In Re Petition To Contest The General Election For District Justice In Judicial District 36−3−03 Nunc Pro Tunc***, 695 A.2d 476, 480 (Pa. Cmwlth. 1997) (absent express direction of appellate court to admit

additional evidence on remand, admission of such evidence lies within trial court's discretion).[2]

Appeal quashed. Jurisdiction relinquished.

Judge Panella joins the memorandum.

Judge Platt concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 04/20/18

---

[2] "This Court is not bound by decisions of the Commonwealth Court. However, such decisions provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate." *Maryland Cas. Co. v. Odyssey*, 894 A.2d 750, 756 n. 2 (Pa. Super. 2006).